# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0582
════════════

THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AT DALLAS,
PETITIONER,

v.

LARRY M. GENTILELLO, M.D., RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued September 12, 2012**

JUSTICE WILLETT delivered the opinion of the Court.

The Texas Whistleblower Act bars retaliation against a public employee who reports his employer's or co-worker's "violation of law" to an "appropriate law enforcement authority"—defined as someone the employee "in good faith believes" can "regulate under or enforce" the law allegedly violated or "investigate or prosecute a violation of criminal law."[1] We consider today whether an employee's report to a supervisor is a report to an appropriate law-enforcement authority under the Act where the employee knows his supervisor's power extends only to ensuring internal compliance with the law purportedly violated. That is, the supervisor, while

_____

[1] TEX. GOV'T CODE § 554.002.

overseeing internal adherence to the law, is empowered only to refer suspected violations elsewhere and lacks free-standing regulatory, enforcement, or crime-fighting authority.

We hold, consistent with our prior cases, that the Act's constricted definition of a law-enforcement authority requires that a plaintiff's belief be objectively reasonable. On that score, purely internal reports untethered to the Act's undeniable focus on law enforcement—those who either make the law or pursue those who break the law—fall short. Other states' whistleblower laws accommodate internal reports to supervisors; Texas law does not. Under our Act, the jurisdictional evidence must show more than a supervisor charged with internal compliance or anti-retaliation language in a policy manual urging employees to report violations internally. For a plaintiff to satisfy the Act's good-faith belief provision, the plaintiff must reasonably believe the reported-to authority possesses what the statute requires: the power to (1) regulate under or enforce the laws purportedly violated, or (2) investigate or prosecute suspected criminal wrongdoing.

As no jurisdictionally sufficient evidence exists here of any objectively reasonable belief in such power, we reverse the court of appeals' judgment and dismiss the case for lack of jurisdiction.

## I. Background

Dr. Larry Gentilello, a professor of surgery at The University of Texas Southwestern Medical Center (UTSW), occupied the Chair of the Division of Burn, Trauma and Critical Care and the Distinguished C. James Carrico, M.D. Chair in Trauma. According to Dr. Gentilello's petition, he raised concerns with his supervisor, Dr. Robert Rege, about lax supervision of trauma residents (*i.e.*, doctors-in-training) at Parkland Hospital, a hospital served by UTSW. Specifically, Gentilello complained that trauma residents were treating and operating on patients without the supervision of

2

an attending physician, "contrary to proper Medicare and Medicaid requirements and procedures."

After being stripped of his faculty chair positions, Gentilello filed a whistleblower suit charging that

the demotion was in retaliation for reporting UTSW's violations of unspecified federal patient-care

and resident-supervision rules.

UTSW contends that Gentilello's whistleblower suit is barred by governmental

immunity—that his suit lacks the Act's required jurisdictional elements—and that the lower courts

erred in denying UTSW's plea to the jurisdiction.[2]  We agree.

## II.  Discussion

Section 554.002 of the Whistleblower Act provides:

(a) A state or local governmental entity may not suspend or terminate the
employment of, or take other adverse personnel action against, a public employee
who in good faith reports a violation of law by the employing governmental entity
or another public employee to an appropriate law enforcement authority.
(b) In this section, a report is made to an appropriate law enforcement authority if the
authority is part of a state or local governmental entity or of the federal government
that the employee in good faith believes is authorized to:
> (1) regulate under or enforce the law alleged to be violated in the report; or
> (2) investigate or prosecute a violation of criminal law.[3]

---

[2] This is our second decision in this long-running dispute.  In 2009 we held it was a "jurisdictional question" whether Gentilello's "reporting of violations of Medicare and Medicaid regulations to a supervisor is a good-faith report of a violation of law to an appropriate law-enforcement authority." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 300 S.W.3d 753, 754 (Tex. 2009) (per curiam) (citing *State v. Lueck*, 290 S.W.3d 876 (Tex. 2009) (holding that whistleblower suits can be dismissed on the pleadings if the plaintiff fails to satisfy the elements of section 554.002)). We remanded to the court of appeals to determine whether Gentilello's suit was barred by governmental immunity in light of *Lueck*.  *Id.*  The court of appeals below held there was sufficient evidence that Gentilello had a good-faith belief he had reported to an appropriate law-enforcement authority under the Act.  317 S.W.3d 865, 870–71.  UTSW then filed this interlocutory appeal.

[3] TEX.GOV'T CODE § 554.002.

3

Since the Legislature defined when "a report is made to an appropriate law enforcement authority," we must use that statutory definition.[4]

This case raises the following issue: Did Gentilello make a good-faith report to an appropriate law-enforcement authority under the Act when he reported alleged violations of law to a supervisory faculty member who oversees internal compliance with myriad Medicare/Medicaid requirements at a state medical school?

### A. An Employee's Good-Faith Belief that the Entity Is an Appropriate Law-Enforcement Authority Must Be Objectively Reasonable.

We explained in *Texas Department of Transportation v. Needham* that "good faith" in the Whistleblower Act context has both objective and subjective elements. It turns on more than an employee's *personal* belief, however strongly felt or sincerely held. It means:

> (1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and
> (2) *the employee's belief was reasonable in light of the employee's training and experience.*[5]

In other words, the employee's belief must be objectively reasonable. Even if Gentilello "honestly believed" that Rege was an appropriate authority, that belief can only satisfy the good-faith requirement "if a reasonably prudent employee in similar circumstances" would have thought so.[6]

---

[4] *Id.* § 311.011(b).

[5] 82 S.W.3d 314, 321 (Tex. 2002) (emphasis added).

[6] *Id.* at 320.

4

We have had three occasions to remove the objective element and protect internal reports to workplace supervisors who lacked the Act's specified powers. All three times we have declined, in 2002,[7] 2009,[8] and 2010.[9]

Our 2002 decision in *Needham* was our first to interpret "appropriate law enforcement authority."[10] There, a Texas Department of Transportation (TxDOT) employee reported a co-worker's alleged drunk driving to a supervisor.[11] Stressing the statutory definition's "limiting nature,"[12] we held there was no basis for a good-faith belief that the supervisor was an appropriate authority under the Act because the employee alleged only that TxDOT could internally discipline and externally report drunk driving infractions.[13]

Next came *Lueck* in 2009, also involving TxDOT, where we considered whether an employee's email report to his supervisor sufficed to meet the Act's jurisdictional requirements.[14] We answered no, noting that the email itself belied the employee's good-faith belief by recognizing the supervisor would have to forward the report elsewhere for prosecution.[15]

---

[7] *Needham*, 82 S.W.3d 314.

[8] *Lueck*, 290 S.W.3d 876.

[9] *City of Elsa v. Gonzalez*, 325 S.W.3d 622 (Tex. 2010) (per curiam).

[10] 82 S.W.3d at 318.

[11] *Id.* at 316.

[12] *Id.* at 319.

[13] *Id.* at 320–21.

[14] 290 S.W.3d at 878–79.

[15] *Id.* at 886.

Most recently, in 2010, we decided *City of Elsa*, involving a city manager fired after reporting alleged violations of law to the city council.[16]  In dismissing the suit, we explained that the employee's belief that "the city council had the authority to postpone the [allegedly unlawful] meeting or otherwise prevent an alleged violation of the Open Meetings Act from occurring does not satisfy either the objective or subjective components of a good-faith belief that the city council was an appropriate law enforcement authority as defined in section 554.002(b)."[17]  The fact that the council was "required to comply with the Open Meetings Act does not equate to its having authority to 'regulate under or enforce' those provisions as to itself."[18]  The plaintiff fell short because "the Whistleblower Act's limited definition of a law enforcement authority does not include an entity whose power is not shown to extend beyond its ability to comply with a law by acting or refusing to act or by preventing a violation of law by acting or refusing to act."[19]

These cases, taken together, decide today's case.  Gentilello fails the objective component of the Act's good-faith test.  Given his training and expertise, he should have known that his supervisor's purely internal authority was not law enforcement but law compliance—in other words, Rege was only capable of ensuring that UTSW followed federal directives.  The bare power to urge compliance or purge noncompliance does not transform Rege into an "appropriate law enforcement authority" *as defined in the Act*.  The term has a specific, legislatively prescribed meaning, and under

---

[16] 325 S.W.3d at 627.

[17] *Id.* at 628.

[18] *Id.*

[19] *Id*.

our recent precedents—*Needham*, *Lueck*, and *City of Elsa*—Gentilello simply could not have formed an objectively reasonable belief that Rege possessed any of the special "law enforcement" powers itemized in section 554.002(b).

## B.  Ensuring Internal Compliance with the Law Is not Synonymous with Regulating Under or Enforcing the Law.

As we have held, an appropriate law-enforcement authority must be actually responsible for regulating under or enforcing the law allegedly violated. It is not simply an entity responsible for ensuring internal compliance with the law allegedly violated.

In *Needham*, where the plaintiff reported to a TxDOT supervisor his co-worker's suspected drunk driving, we held TxDOT was not an appropriate law-enforcement authority under the Act: "TxDOT has no authority to regulate under or enforce the Texas[] driving while intoxicated laws. Nor does it have authority to investigate or prosecute these criminal laws."[20]

The court of appeals tried to distinguish the Medicare/Medicaid rules in this case from the driving while intoxicated (DWI) laws in *Needham*.[21]  Noting that UTSW was required to follow certain Medicare/Medicaid requirements to receive federal funding,[22] the court of appeals held there was a fact issue as to Gentilello's good-faith belief that Rege was an appropriate law-enforcement

---

[20] 82 S.W.3d at 320 (internal citation omitted).

[21] 317 S.W.3d at 870.

[22] *Id.* (citing 42 C.F.R. §§ 415.172, 482.11, 482.12(a), and 482.55, and 42 U.S.C. § 1320a-7b(a)).

authority because, "unlike the DWI statute at issue in *Needham*, the statutes at issue here specifically charge [UTSW] and its physicians with implementing the laws at the hospital level."[23] We disagree.

In *City of Elsa*, the plaintiff reported to the city council alleged violations of the Open Meetings Act, which plainly imposes on cities a duty of compliance and implementation. We deemed the plaintiff's report jurisdictionally insufficient because the city council's obligation to follow the Act "does not equate to its having authority to 'regulate under or enforce' those provisions as to itself."[24] Similarly, UTSW had a legal duty to follow various Medicare/Medicaid requirements, and Rege oversaw that internal compliance, but his power reached no further. As the supervisory Clinical Department Chair who made sure UTSW followed the law correctly, Rege was undoubtedly a law-*compliance* authority, but he was not a law-*enforcement* authority as our cases define that statutory term. As a legal matter, only the United States Secretary of Health and Human Services (HHS Secretary) can "regulate under" or "enforce" Medicare/Medicaid rules. Gentilello asserted no specific rules in his pleadings, but 42 U.S.C. § 1395hh(a) vests sole power in the HHS Secretary to promulgate and enforce the Medicare/Medicaid rules.[25]

Dr. Rege oversees compliance within UTSW, but complying does not equal compelling. Put another way, UTSW is itself subject to regulation but does not subject others to regulation; being regulated is not the same as being the regulator. Indeed, *all* governmental bodies must themselves

---

[23] *Id.*

[24] 325 S.W.3d at 628.

[25] 42 U.S.C. § 1395hh(a) (2011); *see also id.* § 1301(a)(6) (defining "Secretary" as the Secretary of Health and Human Services).

adhere to various statutes and regulations, but such compliance does not equate to the authority to "regulate under or enforce" those provisions. The Whistleblower Act speaks to an authority statutorily empowered to regulate under or enforce the actual law allegedly violated—"the particular law the public employee reported violated is critical to the determination"[26]—or to investigate or prosecute a criminal violation. The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status. Indeed, holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law-enforcement authorities under the Act. Such a result would collide head-on with the Act's limited definition and our cases interpreting that definition.

We do not hold that a Whistleblower Act report can *never* be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large. UTSW concedes in its briefing that "some Whistleblower Act reports may be made internally—for instance, a report of a violation of the Texas Penal Code to a

---

[26] *Needham*, 82 S.W.3d at 320.

9

supervisor who is also a policeman and, as such, is authorized to investigate violations of criminal law." But here, as in *Needham* and *Lueck*, the supervisor lacked any such power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally.

On this point our jurisprudence is clear: the Act protects those who report to authorities that issue legal directives, not authorities that follow them. Federal[27] and other state[28] whistleblower laws explicitly protect purely internal reports to supervisors; Texas law does not. Accordingly, a department chair's ability to oversee internal compliance only with Medicare/Medicaid requirements—not enforce them, not regulate under them, not investigate or prosecute purported criminal violations of them, not perform *any* of the functions listed in section 554.002(b)—dictates the answer in this case. Reporting to Rege was not protected by the Act.

### C. It Is Likewise Insufficient that an Employer Takes Internal Investigative or Disciplinary Action.

---

[27] *See* Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, § 1(C), 126 Stat. 1465, 1466 (to be codified at 5 U.S.C. § 2302(f)(1)) ("A disclosure shall not be excluded from . . . [the whistleblower protections of 5 U.S.C. § 2302(b)(8)] because—(A) the disclosure was made to a supervisor.").

[28] *See, e.g.*, N.J. STAT. ANN. § 34:19-3 (West 2011) ("An employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or (2) is fraudulent or criminal . . . ."); N.Y. LAB. LAW § 740(2) (McKinney Supp. 2012) ("An employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud . . . ."); OHIO REV. CODE ANN. § 4113.52 (LexisNexis 2007) ("(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute . . . the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report . . . . (B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) . . . . (C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) . . . . If the employee who makes a report . . . fails to make such an effort, the employee may be subject to disciplinary action by the employee's employer, including suspension or removal . . . .").

We have made this point clearly, and repeatedly: an entity capable only of disciplining its employees internally is not an "appropriate law enforcement authority" under the Act. As we explained in *Needham* a decade ago, "the statutory definition's limiting language—regulate under, enforce, investigate, and prosecute—does not include an employer's power to internally discipline its own employees for an alleged violation."[29] It is not enough that an employer "has authority to regulate and investigate its employees' conduct only to carry out its internal disciplinary process procedures."[30]

We reaffirmed this view recently in *Lueck*. Looking at the pleadings alone, we held that a TxDOT whistleblower could not have believed in good faith that his supervisor was an appropriate law-enforcement authority because the whistleblower indicated he knew the supervisor possessed no stand-alone authority and would have to refer the report elsewhere.[31] Explaining our opinion in *Needham*, we added: "an employer's power to conduct internal investigative or disciplinary procedures does not satisfy [the] standard for appropriate law enforcement authority under the Act."[32] A supervisor looking into and addressing possible noncompliance in-house bears little resemblance to a law-enforcement official formally investigating or prosecuting that noncompliance on behalf of

---

[29] 82 S.W.3d at 321.

[30] *Id*. at 320.

[31] *Lueck*, 290 S.W.3d at 885–86.

[32] *Id*. at 886 (citing *Needham*, 82 S.W.3d at 320–21).

11

the public, or a regulatory authority charged with promulgating or enforcing regulations applicable to third parties generally.

Gentilello argues, contrary to our precedent, most recently *City of Elsa*,[33] that Rege's authority to ensure UTSW's own compliance at the hospital level, including meting out discipline, made Rege an appropriate law-enforcement authority. Our cases hold the opposite, and we reaffirm today what we have said repeatedly: lodging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the Whistleblower Act.[34] The Act's language is restrictive, and what matters is that the reported-to authority is reasonably believed to be empowered either to regulate under or enforce the law allegedly violated, or to investigate or prosecute criminal offenses.

In this case, Gentilello and his colleagues acknowledged that, while Rege oversaw compliance within UTSW, Rege would have to report any violations to external law-enforcement authorities. Gentilello conceded in his hearing testimony that Rege's authority was purely inward-looking, overseeing internal adherence and disciplining those who went astray, while referring suspected illegality "to who[m]ever is in charge of enforcing the law"—official authorities like the Center for Medicare and Medicaid Services that are actually empowered to do what the Act contemplates. Gentilello and Rege likewise testified that Rege had no authority to write rules and regulations under the Medicare/Medicaid statutes.

---

[33] 325 S.W.3d at 628.

[34] *Id.*; *Lueck*, 290 S.W.3d at 885–86; *Needham*, 82 S.W.3d at 319–21.

12

UTSW's Clinical Department Chair is not a police officer or prosecutor. And conducting private oversight and discipline is not official action taken to combat violations of public law. The Medicare/Medicaid laws do not endow medical-school faculty supervisors or hospital department chairs with any special regulatory, enforcement, investigative or prosecutorial authority. It was reasonable for Gentilello to raise concerns about improper billing or patient-care practices with Rege, but it is objectively unreasonable for Gentilello, given his experience, expertise and training, to equate his supervisor with an "appropriate law enforcement authority." Rege was charged with complying and implementing, not with regulating or enforcing, much less with investigating and prosecuting criminal activity. As we stressed in *Needham*, broadening the Act to include an employer's internal disciplinary process "would mean all public employers with a disciplinary policy for handling employees' alleged illegal conduct" are captured by the Act, not just those with actual regulatory, enforcement, or criminal investigatory or prosecutorial authority.[35]

### D. An Entity's Stock Anti-Retaliation Policies are Insufficient to Expand Coverage of the Whistleblower Act.

According to the court of appeals, Gentilello's good-faith belief that Rege was an appropriate law-enforcement authority was rooted in UTSW's billing compliance program,[36] which lays out UTSW's internal guidelines regarding Medicare/Medicaid compliance and states:

- "The Clinical Department Chair [i.e., Rege] shall have the responsibility for ensuring the goals of [Medicare/Medicaid] billing compliance are met"; and

---

[35] 82 S.W.3d at 320.

[36] 317 S.W.3d at 870–71.

13

- "Employees who report, in good faith, possible compliance problems shall be protected from retaliation or harassment, as established by law."

Gentilello contends this language suffices to defeat UTSW's sovereign immunity. We disagree that this language vests Rege with any law-enforcement powers or satisfies our previous good-faith belief decisions. Holding otherwise would enable easy circumvention of our on-point precedent.

On its face, this document simply reflects UTSW's commitment to internal compliance; it cannot be interpreted to relax the Whistleblower Act's requirements. It is UTSW's declaration that it will abide by all directives from the federal government concerning Medicare/Medicaid laws, nothing more. It does not empower Rege to regulate under or enforce Medicare/Medicaid laws, or to investigate and prosecute criminal violations.

Gentilello concedes that Rege had no authority to jail wayward employees, but instead urges that Rege's general supervision of internal compliance and UTSW's anti-retaliation pledge defeats UTSW's immunity. However, as explained above, the Act and our cases plainly require an objectively reasonable belief that Rege was an appropriate law-enforcement authority. It is not enough that Rege exhorted internal UTSW compliance with federal health-care provisions. Nor is it enough that UTSW recited anti-retaliation principles in an internal policy manual. Neither supports a good-faith belief that Rege exercised the law-enforcement powers specified in section 554.002(b). In sum, a whistleblower plaintiff who reports only to an internal supervisor who lacks section 554.002(b) powers cannot survive a jurisdictional challenge under the Act's good-faith belief provision merely by pointing to anti-retaliation language in a workplace policy manual.

14

### III. Conclusion

Gentilello's Whistleblower Act claim cannot be squared with our precedent construing section 554.002(b)'s limited definition of appropriate law-enforcement authority. The Act, by its text and structure, restricts "law enforcement authority" to its commonly understood meaning. That is, it protects employees who report to authorities that actually promulgate regulations or enforce the laws, or to authorities that pursue criminal violations. The specific powers listed in section 554.002(b) are outward-looking. They do not encompass internal supervisors charged with in-house compliance and who must refer suspected illegality to external entities. Our cases are consistent on this point, and we reaffirm them today. Such internal complaints do not satisfy the requirement that the "report [be] made to an appropriate law enforcement authority" under section 554.002 of the Whistleblower Act.

It may well be reasonable for a government employee to report suspected violations of law to a supervisor, but that does not mean every supervisor meets the Whistleblower Act's definition of an "appropriate law enforcement authority." This is a legislatively-mandated legal classification, one tightly drawn, and we cannot judicially loosen it. Other states protect purely internal whistleblowing, but under our Legislature's narrower view, a whistleblower cannot reasonably believe his supervisor is an appropriate law-enforcement authority if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law. Merely overseeing adherence, including urging employees to report violations internally, is insufficient under the Texas Whistleblower Act.

15

Accordingly, as UTSW's immunity remains intact, we reverse the judgment of the court of appeals and dismiss the case for lack of jurisdiction.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** February 22, 2013