

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-11-00152-CV
_____

TEXAS YOUTH COMMISSION, APPELLANT

V.

THOMAS BOLLINGER, APPELLEE

On Appeal from the 126th District Court
Travis County, Texas
Trial Court No. D-1-GN-03-00162, Honorable Stephen Yelenosky, Presiding

May 28, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

The Texas Youth Commission[1] appeals a judgment entered in favor of Thomas

Bollinger, following a jury trial of his Texas Whistleblower Act claim.[2]  In three issues,

---

[1]Effective December 1, 2011, the Texas Youth Commission was abolished and the powers and duties of that agency were transferred to the newly created Texas Juvenile Justice Department.  *See generally* TEX. HUMAN RESOURCES CODE, §§ 201.001 – 261.152 (WEST 2013).  For purposes of this opinion, we will continue to refer to the Texas Youth Commission simply as TYC.

[2]*See* Tex. Gov't Code Ann. §§ 554.001-.010 (West 2012). Throughout the remainder of this opinion, we will refer to those provisions as either the "Whistleblower Act" or simply the "Act."

TYC asserts (1) the trial court lacked jurisdiction because Bollinger's evidence of a Whistleblower Act claim was legally insufficient; (2) Bollinger's evidence at trial was legally and factually insufficient to establish causation; and (3) the trial court's causation instruction to the jury was erroneous. In his cross-appeal, Bollinger contends the trial court erred by failing to award reinstatement in its judgment. We reverse the trial court's judgment and render judgment that Bollinger take nothing.

## BACKGROUND

In December 2007, Bollinger filed his *Third Amended Petition* alleging TYC violated the Texas Whistleblower Act by retaliating against him for making numerous good faith reports concerning violations of law by his TYC supervisor, Jerome Parsee. In May 2010, the trial court denied TYC's motion to dismiss based on allegations that Bollinger's reports were (1) not made in good faith, (2) did not allege violations of law and (3) were not directed to an appropriate law enforcement authority. In June 2010, a five-day jury trial was held. At the conclusion of Bollinger's case-in-chief and again at the close of all evidence, TYC moved for a directed verdict based upon the same grounds. The trial court granted a directed verdict in favor of TYC as to all reports, save two: (1) the "Fire Alarm Report" based on Bollinger's complaint of unsafe working conditions contained in his *Statement of Grievance* dated November 7, 2001, and (2) the "Pepper Spray Report" based on his allegation in an email dated November 10, 2001, that Parsee authorized the misuse of pepper spray.

The jury subsequently returned a verdict in Bollinger's favor and, in its judgment, the trial court awarded him $45,850 in past lost wages, $43,150 in compensatory

damages, $16,000 in attorney's fees and pre/post judgment interest. Bollinger subsequently moved to modify the trial court's judgment to include reinstatement. After a hearing, the trial court denied Bollinger's motion and issued *Findings of Fact and Conclusions of Law*. TYC appeals the monetary judgment and Bollinger appeals the denial of reinstatement. Because disposition of TYC's first issue resolves the controversy, we pretermit TYC's remaining issues and Bollinger's cross-issue. *See* TEX. R. APP. P. 47.1.

## DISCUSSION

By its first issue, TYC asserts Bollinger presented legally insufficient evidence that he made a "good faith report of a violation of law" to an "appropriate law enforcement authority," essential elements of a Texas Whistleblower Act claim. TYC reasons that because those elements are totally lacking, there is no basis in law to support a judgment in Bollinger's favor. We agree.

## STANDARD OF REVIEW

In a legal sufficiency review, this Court must credit favorable evidence to the verdict if reasonable jurors would have done so, disregard contrary evidence unless reasonable jurors could not have done so, and reverse the jury's determination only if the evidence presented at trial would not enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We sustain legal sufficiency challenges if the record reveals: (1) the complete absence of evidence of a vital fact; (2) the court is barred by the rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered

3

to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). In applying this standard of review, we must be mindful that the jurors are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819.

## THE TEXAS WHISTLEBLOWER ACT

The Texas Whistleblower Act prohibits any state or local government from taking an adverse personnel action against a public employee who, in good faith, reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (WEST 2012). The statute was enacted to protect public employees who report illegal activity and to enhance openness in government while compelling compliance with the law. *Castaneda v. Tex. Dep't of Agriculture*, 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992, writ denied). The cause of action is purely statutory, creating a right unknown at common law. *Scott v. Godwin*, 147 S.W.3d 609, 621 (Tex.App.—Corpus Christi 2004, no pet.).

To establish a claim for retaliation under the Act, a claimant must prove the following elements: (1) claimant was a public employee; (2) he acted in good faith in making a report; (3) the report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) claimant suffered retaliation as a result

4

of making the report. *County of Bexar v. Steward*, 139 S.W.3d 354, 357-58 (Tex.App.—San Antonio 2004, no pet.). In the context of a whistleblower claim, "good faith" has both a subjective and objective component. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). The subjective component ensures that an employee actually believes that he is reporting a violation of law to an appropriate law enforcement agency, while the objective component ensures that the employee's beliefs are objectively reasonable "in light of the employee's training and experience." *Id.* at 320. (citing *Wichita County v. Hart,* 917 S.W.2d 779, 784 (Tex. 1996)). Under the objective component, a claimant is entitled to protection "if a reasonably prudent employee in similar circumstances" would have held those beliefs. *Id.*

## VIOLATION OF LAW

The Act defines a "law" as (1) a state or federal statute, (2) an ordinance of a local governmental entity, or (3) a rule adopted under a statute or ordinance. TEX. GOV'T CODE ANN. § 554.001(1) (WEST 2012). Although an employee need not identify a specific law when making a report and need not establish an actual violation of law at trial, the employee must identify some law prohibiting the complained of conduct to give rise to a whistleblower claim. *Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642-43 (Tex.App.—Corpus Christi 2001, pet. denied). "Otherwise, every complaint, grievance and misbehavior could support a claim under the Act." *Id.* Violations of an agency's internal procedures and policies will not alone support a claim. *Mullins v. Dallas Indep. Sch. Dist.,* 357 S.W.3d 182, 188 (Tex.App.—Dallas 2012, pet. filed) (citing *Llanes*, 64 S.W.3d at 642). *See Vela v. City of Houston,* 186 S.W.3d 49, 53

5

(Tex.App.—Houston [1st Dist.] 2005, no pet.) ("Violation of the City's internal policies are not 'laws' under the Act. [Citations omitted]").

## APPROPRIATE LAW ENFORCEMENT AUTHORITY

The Act requires the aggrieved employee to make his report to "an appropriate law enforcement authority." *See* TEX. GOV'T CODE ANN. § 554.002(a)-(b) (WEST 2012). The Act defines an appropriate law enforcement authority as "part of a state or local governmental entity . . . that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* at § 554.002(b). This "limited definition of a law enforcement authority does not include an entity whose power is not shown to extend beyond its ability to comply with a law by acting or refusing to act or by preventing a violation of law by acting or refusing to act." *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 628 (Tex. 2010). *See Needham,* 82 S.W.3d at 319 (holding the definition's limiting language means the entity must have the authority to regulate, enforce, investigate, or prosecute the particular law reported to have been violated). *See also Duvall v. Tex. Dep't of Human Services,* 82 S.W.3d 474, 481-82 (Tex.App.—Austin 2002, no pet.) (holding that the authority to take remedial action to internally discipline an employee does not equate to the authority to regulate under, enforce, prosecute, or investigate a violation of law).

Applying the subjective and objective components of good faith to this requirement means the reporting employee must possess an actual belief that the entity receiving the report was authorized to regulate under or enforce the law allegedly

6

violated, or investigate or prosecute a violation of criminal law; and, those beliefs must have been reasonable in light of the reporting employee's training and experience. *Univ. of Tex. Southwestern Med. Ctr. at Dallas v. Gentilello,* No. 10-0582, 2013 Tex. LEXIS 154, at *6 (Tex. Feb. 22, 2013).

In *Gentilello*, the Supreme Court held that a person or entity with authority to ensure internal compliance with the law does not, *per se*, make that person or entity an appropriate law enforcement authority within the meaning of the Act. In order to meet the requirements of the Act, a claimant must show that the person or entity to whom the report was made had "free-standing regulatory, enforcement, or crime fighting authority." *Id.* at *1. Furthermore, as clarified in *Texas A & M University – Kingsville v. Moreno*, No. 11-0469, 2013 Tex. LEXIS 155, at *2 (Tex. Feb. 22, 2013), the reported-to person or entity must be charged with more than mere internal adherence to the law allegedly violated. An "appropriate law enforcement entity" does not include persons charged with mere internal adherence to the law allegedly violated who are responsible for reporting suspected illegalities to external entities. The Act protects employees who report violations to authorities that actually promulgate regulations or enforce the laws, or to authorities that pursue criminal violations. *Id.* at *3.

### THE FIRE ALARM REPORT

In accordance with TYC procedures, Bollinger filed a *Grievance* with the Human Resources Department at the Marlin Orientation and Assessment Unit alleging unsafe working conditions. In his *Voluntary Statement* submitted twelve days after his *Grievance*, he alleged the fire alarms at the unit had been turned off for two to three

7

days.  In support of his contention that noncompliance with a safety condition constituted a violation of law, Bollinger contends TYC is required by law to adopt policies and rules governing the operation of its facilities and programs.  *See* TEX. HUM. RES. CODE ANN. § 242.003 (WEST 2013).  He then offered evidence indicating that possible corrective action, including probation or termination, could be taken against an employee who violated the rules or regulations adopted by TYC.

This report fails, as a matter of law, as a good faith report of a violation of law to an appropriate law enforcement authority.  First, Bollinger failed to cite any particular law, rule, or regulation that was being violated if fire alarms at a TYC facility were inoperable for two to three days.  To establish a colorable claim under the Act, a claimant must identify some actual law which prohibits the complained-of-conduct.  *Mullins,* 357 S.W.3d at 188-89 (claimant required to identify what law or laws he believed were violated by the conduct described in his report); *Vela,* 186 S.W.3d at 53 (no violation of law where claimant cites no law that he believes was violated), *Resendez v. Tex. Comm. on Environmental Quality,* 391 S.W.3d 312, 323 (Tex.App.— Austin 2012, pet. filed) (some actual law which prohibits the complained-of-conduct must exist).

Secondly, TYC does not qualify as an "appropriate law enforcement authority." Although TYC *may* perform fire protection, fire prevention, and fire suppression activities at its facilities, *see* TEX. HUM. RES. CODE ANN. § 242.068 (West 2013), Bollinger cites no law giving TYC any legal authority to investigate or prosecute violations of any fire protection laws, rules or regulations on any level, state or local. Furthermore, while TYC may internally discipline an employee who fails to fulfill their

8

responsibilities concerning proper fire protection at a given facility, its power to conduct internal investigative or disciplinary procedures does not satisfy the standard for an appropriate law enforcement authority. *Gentilello,* 2013 Tex. LEXIS 154, at *17-18; *Moreno,* 2013 Tex. LEXIS 155, at *1-2; *Needham*, 82 S.W.3d at 320-21.

Given Bollinger's testimony at trial coupled with his experience,[3] we find there is no evidence Bollinger had a subjective good faith belief that he was reporting a violation of law to an appropriate law enforcement authority or that, had he held such a good faith belief, it was objectively reasonable. *See Gentilello,* 2013 Tex. LEXIS 154, at *8-9; *Moreno,* 2013 Tex. LEXIS 155, at *3-4; *Vela,* 186 S.W.3d at 53. Accordingly, we find there is no evidence the fire alarm report represented a good faith report of a violation of law to an appropriate law enforcement authority under the Act.

### THE PEPPER SPRAY REPORT

In an email to a TYC investigator, Bollinger stated that an anonymous employee informed him that, within the last thirty days, several TYC residents had been sprayed with pepper spray ("OC sprays") as a form of punishment and that this action was done with Parsee's authorization.[4] The email indicated that Bollinger had no idea whether the information was correct. Attached to the email was a statement referencing TYC reporting and investigation policies requiring any employee who had "cause to believe" that a resident had been *abused* to report the allegation to the local administrator. The

---

[3]Bollinger holds multiple degrees in the areas of Psychology, Social Science, and Social Work. He is also a Ph.D. candidate in the area of family and human development and he has acquired numerous state certifications. In the course of serving as an assistant superintendent for TYC for approximately four years, he has received extensive training on TYC's policies and procedures.

[4]Although TYC authorizes the use of pepper spray at its facilities under certain circumstances, Bollinger testified that using pepper spray as a form of punishment is not authorized.

9

local administrator was then required to notify an appropriate law enforcement agency if there was "cause to believe" that a resident had been or might be abused, neglected or exploited.[5]

Later, Bollinger filed a *Voluntary Statement* reiterating his email complaint and encouraging staff to contact TYC's youth rights staff. At trial, Bollinger testified that allegations of abuse and neglect were made to the superintendent who would typically assign an in-house youth rights investigator to conduct an investigation. He further testified that in-house investigators reported to the superintendent and allegations of abuse were usually handled within the facility. In accord, the allegations in the email were subsequently investigated by Shirley McCullough, a youth rights investigator, who concluded the allegation was unsubstantiated. In a memorandum to Bollinger from Lydia Bernard, Director of Juvenile Corrections, Bernard indicated that Bollinger's allegations regarding improper use of pepper spray could not be confirmed because he was unable to provide any detailed information (such as dates or times) to support the anonymous allegations reported by him.

Again, these reports concerning the alleged misuse of pepper spray fail, as a matter of law, as a good faith report of a violation of law to an appropriate law enforcement authority. In support of his contention that the use of pepper spray constituted a violation of law, Bollinger again relies on the statutory requirement that TYC adopt policies and rules governing the operation of its facilities and programs. *See* TEX. HUM. RES. CODE ANN. § 242.003 (WEST 2013). Relying then on a provision of the

---

[5]Bollinger does not contend that TYC policy or procedures prohibited him from directly reporting any alleged abuse to another state agency or law enforcement authority.

Family Code defining "abuse," TEX. FAM. CODE ANN. § 261.001(1) (WEST SUPP. 2012), he contends TYC employment guidelines provide for probation or termination of an employee who uses excessive force against a resident.

Notwithstanding these contentions, there is an absence of evidence indicating Bollinger had a subjective good faith belief that he was reporting an actual violation of law. His email is ambivalent as to whether anything untoward had occurred with respect to the residents under the care and supervision of TYC and it appears his reports were made merely for the purpose of satisfying his compliance with TYC policies and procedures regarding the reporting of abuse. His email expressly indicates he has no personal knowledge regarding the truth of the allegations and, at trial, he testified "[t]he only thing I wanted to do was follow [TYC's] policies and procedures."

Even if we interpret Bollinger's email to allege a violation of law such as an assault; TEX. PENAL CODE ANN. § 22.01(a)(1) (WEST 2008), or assault of a child; *id.* at 22.04(a) (WEST SUPP. 2012), we note that TYC would be responsible to pass this information on to *"an appropriate law enforcement agency"* if its local administrator's investigation produced cause to believe abuse had occurred. *See* TEX. FAM. CODE ANN. §§ 261.308(a), (b), 261.402(b) (WEST 2008). *See also* TEX. FAM. CODE ANN. § 261.105(e) (WEST SUPP. 2012) (requiring TYC to develop guidelines appropriate for referral of child abuse to a "law enforcement agency"), § 261.3011 (WEST 2008) (requiring the Texas Department of Family and Protective Services, in consultation with an *appropriate law enforcement agency*, to develop guidelines and joint protocols for joint investigations of child abuse allegations). While TYC's personnel policies permit TYC to discipline an employee who uses excessive force against a resident, TYC's

11

ability to conduct internal investigative or disciplinary procedures does not satisfy the standard for an "appropriate law enforcement authority." *Gentilello,* 2013 Tex. LEXIS 154, at *17-18; *Moreno,* 2013 Tex. LEXIS 155, at *1-2; *Needham,* 82 S.W.3d at 320-21. If TYC's investigation indicated there were sufficient grounds for the filing of criminal charges, it would be required to submit a report to a court, district attorney, and/or an *appropriate law enforcement agency* recommending action. *See* TEX. FAM. CODE ANN. § 261.308(a), (b) (WEST 2008).

Given Bollinger's testimony at trial coupled with his experience, we find there is no evidence Bollinger had a subjective good faith belief that he was reporting a violation of law to an appropriate law enforcement authority or that, had he held such a good faith belief, it was objectively reasonable. *See Gentilello,* 2013 Tex. LEXIS 154, at *8-9; *Vela,* 186 S.W.3d at 53. *See also Tex. Dep't of Crim. Just. v. Terrell,* 18 S.W.3d 272, 275 (Tex.App.—Tyler 2000, pet. denied) (allegations of illegal conduct premised upon rumor and innuendo do not establish a factual basis upon which a fact-finder would conclude a reasonable employee with the same level of training and experience would have made such a report).[6]

Accordingly, we find there was no evidence Bollinger's fire alarm report or pepper spray report represented a good faith report of a violation of law to an appropriate law enforcement authority. As such, there was legally insufficient evidence at trial that

---

[6]At trial, Bollinger failed to offer any evidence that the second-hand report of an anonymous tip represents "cause." *See, for example,* TEX. FAM. CODE ANN. § 261.304(a) (WEST 2008) ("If the department receives an anonymous report of child abuse . . ., the department shall conduct a preliminary investigation to determine whether there is some evidence to corroborate the report," and "[u]nless the department determines that there is some evidence to corroborate the report of abuse, the department may *not* conduct the thorough investigation required by this chapter or take any action against the person accused of abuse.")

would enable reasonable and fair-minded persons to reach the verdict under review. TYC's first issue is sustained, thereby pretermitting TYC's remaining issues and Bollinger's cross-issue. Tex. R. App. P. 47.1.

## Conclusion

The trial court's judgment is reversed and a judgment that Bollinger take nothing is rendered.

Patrick A. Pirtle
Justice