# IN THE SUPREME COURT OF TEXAS

════════════

No. 12-0601

════════════

CANUTILLO INDEPENDENT SCHOOL DISTRICT, PETITIONER,

v.

YUSUF ELIAS FARRAN, RESPONDENT

════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

════════════════════════════════════════════════════════

**PER CURIAM**

Yusuf Farran was employed as Executive Director of Facilities and Transportation with the Canutillo Independent School District. After he was fired, he sued the District for violation of the Texas Whistleblower Act, TEX. GOV'T CODE § 554.002, and for breach of contract. Because we agree with the District that the trial court properly granted its plea to the jurisdiction, we affirm in part and reverse in part the judgment of the court of appeals and dismiss the case.

According to Farran's evidence presented in opposition to the plea to the jurisdiction, he observed employee theft and falsification of time cards. He also observed that a contractor, Henry's Cesspool Services, was overpaid, did not dispose of grease-trap waste as specified in its contract, and violated state law regulating the use of government funds and city regulations governing waste disposal. Farran reported these improprieties to the District superintendent, assistant superintendent, internal auditor, and school board. Some school board trustees were displeased with the reports, and

one trustee told Farran that if he valued his job he should refrain from making accusations regarding the grease trap. Even after this threat, Farran continued to complain to the superintendent about the grease-trap issues.

In March 2009, after Farran's internal complaints to the District, the superintendent questioned Farran about personal phone calls he had made to another man. Farran thought the other man was having an inappropriate relationship with Farran's wife. The calls were of a threatening nature and were made by Farran and another District employee. Recordings of the calls had been sent to the police, but Farran denied making the calls on school equipment or during work hours. Farran was suspended. In May, the board voted to give Farran notice of termination for one or more of eight specified grounds, subject to a due process hearing. Farran requested a hearing. In July, Farran contacted the FBI regarding the conduct of Henry's Cesspool Services. The District became aware of this report. The due process hearing occurred in August. The hearing officer determined that good cause existed for termination and recommended that the board's initial termination decision be sustained. In September, the board accepted the hearing officer's recommendation, and Farran was fired.

The trial court granted the District's plea to the jurisdiction. The court of appeals held that the trial court erred in granting the plea as it related to Farran's whistleblower claim that he was fired for reporting financial improprieties that violated of the Texas Education Code and Texas Constitution. The court of appeals agreed with the trial court that Farran's other claims should be dismissed. ___ S.W.3d ___.

The District argues to us that Farran's complaints to the school board, superintendents, and internal auditor were not good-faith complaints of a violation of law to a "law enforcement authority" under the Whistleblower Act. We agree. There is no evidence that these officials had authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally. *See Univ. of Houston v. Barth*, ___ S.W.3d ___, ___ (Tex. 2013); *Tex. A & M Univ.–Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013); *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013).

Farran only offered evidence that these school district officials were responsible for internal compliance with the laws. For example, he asserted that he reported to the superintendents because he believed those officials had authority to "ensure *the District* did not pay for services that were not actually provided, and to ensure compliance with the laws." He believed the laws he cited "authorized the District to regulate *its* use of public funds and to enforce all laws by causing the cessation of violations of laws committed *by the District and its employees*." He asserted that he believed the District "has a duty to *self regulate and self enforce* the laws he alleged were violated, and for this reason, he reported the violations to Defendant's School Board, Superintendents, and Auditor in the good faith belief the Defendant was authorized to regulate under or enforce the laws, and authorized to investigate a violation of the laws." He attached the District's written policies stating that the internal auditor duties included "[a]ssisting in the investigation of any suspected fraudulent activities *within the District*."

This evidence does not support an objective, good-faith belief that the school district officials to whom Farran complained had authority "to enforce, investigate, or prosecute violations of law

3

against third parties outside of the entity itself" or had "authority to promulgate regulations governing the conduct of such third parties." *Gentilello*, 398 S.W.3d at 686. "Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status" under the Whistleblower Act. *Id.* Thus, the plea to the jurisdiction was well-taken, because "lodging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the Whistleblower Act." *Id.* at 687.

By cross-appeal, Farran makes two arguments not subsumed in the discussion above. First, he argues that the court of appeals erred in concluding that his report to the FBI was a report to a law enforcement authority that was actionable under the Whistleblower Act. We agree with the court of appeals that this claim fails because of a timing problem: there was legally insufficient evidence that the report to the FBI caused Farran's termination.

To establish a Whistleblower Act claim, the plaintiff must show that his report to a law enforcement authority caused him to suffer the complained-of adverse personnel action. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000). "To show causation, a public employee must demonstrate that *after* he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct." *Id.* (emphasis added). As noted above, and according to Farran, he had already been told, months prior to his report to the FBI, to refrain from making complaints about the grease-trap contractor if he valued his job. He continued to complain, he was suspended, and the board gave notice of its intent

4

to terminate him—all prior to the FBI report. To prevail on a theory that the FBI report caused his termination, Farran would have to show that, but for that report, the school district would have changed its mind and retained him. There is legally insufficient evidence from which a reasonable and fair-minded finder of fact could make such a finding. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (holding that when parties submit evidence at plea to the jurisdiction stage, review of the evidence generally mirrors the summary judgment standard); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented."). On this record, Farran's own evidence showed that from the initiation of termination proceedings, prior to the FBI report, the District never wavered in its view that Farran should be terminated. According to Farran's own petition, the superintendent, months prior to the FBI report, had "sought to identify false and pretextual reasons to terminate Plaintiff's employment." Farran argued in his briefing to the trial court that "[t]he minor acts for which he was placed on suspension and the subsequent addition of unrelated grounds for the proposed termination"—all occurring before he contacted the FBI—"are evidence the District intended to discharge Mr. Farran based on pretext from the date [the superintendent] suspended him." Farran was given the opportunity persuade the District to change its mind at a hearing, but the effort failed. The hearing officer found good cause for his termination and the board proceeded to fire him. Farran himself claimed that at the due process hearing he was unable to present evidence on his whistleblower claims, although the hearing officer addressed the grease-trap issues and concluded that they were unrelated to the board's initial termination decision.

Regardless, the record is devoid of evidence that the board would have been persuaded to change its mind but for the report to the FBI, that the report had any influence on the hearing officer's recommendation that the initial termination decision be sustained, or that the report otherwise played a role in the board's preliminary or final termination decisions.

Farran also argues that the court of appeals erred in concluding that his breach of contract claim failed because he did not first pursue this claim with the Commissioner of Education. We agree with the court of appeals on this issue. Farran's contract claim was based on an employment contract provision stating that he could only be terminated for cause. School district employees like Farran, alleging a breach of an employment contract where facts are in dispute, generally must exhaust administrative remedies by bringing an appeal to the Commissioner. *See* TEX. EDUC. CODE § 7.057(a)(2)(B) (providing for appeal to the Commissioner of claims of alleged violations of "a provision of a written employment contract between the school district and a school district employee"); *see also Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 792 (Tex. App.—Dallas 2012, pet. denied); *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 128 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Ysleta Indep. Sch. Dist. v. Griego*, 170 S.W.3d 792, 795 (Tex. App.—El Paso 2005, pet. denied (citing *Mission Indep. Sch. Dist. v. Diserens*, 188 S.W.2d 568, 570 (Tex. 1945))); *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 367 (Tex. App.—San Antonio 2004, no pet.); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 688 (Tex. App.—Tyler 1996, no writ). Farran argues that his contract claim did not require exhaustion because it was based on a Whistleblower Act violation. To be sure, the Whistleblower Act has its own statutory remedies and procedures that do not require exhaustion with the Commissioner under the Education Code, but

as explained above, Farran has no cognizable Whistleblower Act claim. To the extent he sought relief under a separate common-law breach of contract cause of action, he failed to exhaust administrative remedies.

In sum, the trial court properly granted the plea to the jurisdiction. Accordingly, we grant the petition for review and, without hearing oral argument, affirm in part and reverse in part the court of appeals' judgment and dismiss the case. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** August 30, 2013