**Opinion filed January 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00012-CV

_____

## BLANCA NIETO, Appellant

## V.

## PERMIAN BASIN COMMUNITY CENTERS
## FOR MHMR, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-129810**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Blanca Nieto appeals the trial court's grant of the Permian Basin Community Centers for MHMR's plea to the jurisdiction. We affirm.

The Permian Basin Community Centers for MHMR (PBCC) is a governmental entity that provides mental health and mental retardation services for

Ector, Midland, Brewster, Culberson, Hudspeth, Jeff Davis, Pecos, and Presidio Counties. Nieto began working for PBCC's Odessa clinic in May 2007 as an intake/screening coordinator. In February 2010, Nieto sent an e-mail to Larry Carroll, PBCC's executive director, and reported that she had observed several incidents of fraud. Specifically, Nieto told Carroll that she and another employee had been instructed to backdate the date of service for a consumer so that the consumer would qualify for a rehabilitation bed through MHMR; that the director of the Odessa clinic told caseworkers to have consumers sign treatment plans ahead of time, sometimes three at a time, in the event that the caseworker could not meet with the consumer to update paperwork; that a case manager had reported that she had met with consumers on dates and at times when either she or the consumer would not have been able to meet; and that her team leader, and immediate supervisor, had instructed caseworkers to report that they had met with consumers longer than they had actually met so that they would not have to meet with consumers as often in order to meet quota. Carroll forwarded Nieto's e-mail to Julie Mayes, PBCC's compliance officer.

Mayes conducted a fraud investigation and, as part of her investigation, audited two caseworkers. Mayes confirmed that a case manager had reported that she had met with consumers on dates and at times when neither she nor the consumer would have been able to meet. As a result of the investigation, Mayes directed PBCC personnel to reimburse Medicaid for one of the charges. However, Mayes determined that there was no evidence of fraud. Instead, she concluded that the errors were the result of incompetence. Both caseworkers were told the importance of accurately reporting times and dates on their time sheets as well as on their service reports.

During the investigation, Nieto felt like her supervisors and coworkers were retaliating against her by assigning her a specific time for lunch when other

employees were allowed to take lunch at their discretion; by not providing an employee to cover for her during lunch so that she was in effect not able to take a lunch; by ignoring her and treating her in a hostile manner; by requiring her to take every intake phone call, including calling her out of the restroom to take a call; by subjecting her to a higher level of scrutiny than other employees; by questioning her actions even though they were consistent with previous practice; and by attempting to intimidate her. Nieto reported the retaliation to Carroll and Mayes. Carroll encouraged her to file a complaint in accordance with PBCC's Employee Complaint Policy #5.24 and also told her not to resign. Whether she filed a complaint under #5.24 is disputed.

Nieto did not feel that she could take the retaliation any longer and submitted a letter of resignation on March 30, 2010. In that letter, she gave two weeks' notice. Her last day was scheduled for April 16; however, because Nieto continued to feel ostracized, criticized, and humiliated, she quit on April 12. Nieto retained counsel and sent PBCC a letter in which she requested a grievance hearing and in which she notified PBCC that she intended to file suit against PBCC for its violation of the Texas Whistleblower Act under Chapter 554 of the Texas Government Code.[1] PBCC did not have a post-employment grievance policy and did not conduct the requested hearing.

Nieto filed suit against PBCC under the Texas Whistleblower Act. She alleged that she was constructively discharged due to retaliation after she reported the fraud. PBCC filed a plea to the jurisdiction in which it claimed that Nieto had failed to plead the minimum jurisdictional elements for a claim under the Whistleblower Act and that, thus, the trial court lacked subject-matter jurisdiction. The trial court sustained the plea and dismissed Nieto's petition.

---

[1] TEX. GOV'T CODE ANN. ch. 554 (West 2012).

Nieto presents four issues on appeal.  In her first issue, Nieto argues that the trial court erred when it sustained PBCC's plea to the jurisdiction because her pre-suit request for a grievance hearing was sufficient to give PBCC notice of her claim when PBCC did not have a post-employment grievance policy.  In Issues Two, Three, and Four, Nieto asserts that the trial court erred when it sustained PBCC's plea to the jurisdiction because she alleged sufficient facts to show that she was constructively discharged, that she had a reasonable belief that the conduct she reported was fraud, and that she had a reasonable belief that she reported the violation to an appropriate law enforcement authority.

We review a trial court's ruling on a plea to the jurisdiction de novo.  *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  In reviewing a plea to the jurisdiction, we are not required to look solely at the pleadings but may consider evidence relevant to the jurisdictional issue.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).  We construe the pleadings liberally in favor of the plaintiff and take as true all evidence favorable to the plaintiff.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004).

The State is afforded sovereign immunity both as to suit and as to liability unless the legislature expressly waives it.  *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).  Sovereign immunity from suit deprives a trial court of subject-matter jurisdiction in lawsuits against the State unless the State has consented to the suit.  *Miranda*, 133 S.W.3d at 224.  On the other hand, sovereign immunity from liability is not jurisdictional but, rather, is an affirmative defense.  *Id.*  Although often used interchangeably, sovereign immunity should not be confused with governmental immunity; they represent distinct concepts.  *Tex. Tech Univ. Health Sci. Ctr. v. Buford*, 334 S.W.3d 334, 336 (Tex. App.—Eastland 2010, no pet.).  Sovereign immunity is a term applied to the State and to divisions of state

government, including boards, hospitals, and universities. *Id.* Governmental immunity is the correct term to apply to situations involving immunity for political subdivisions such as counties, cities, and school districts. *Id.* PBCC is a political subdivision.

A plea to the jurisdiction is the proper vehicle for a governmental entity, such as PBCC, to assert immunity. *Miranda*, 133 S.W.3d at 225–26. The burden is on the plaintiff to establish that immunity has been waived. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The legislature has waived immunity for lawsuits in which a public employee sufficiently alleges that a governmental entity has violated the Texas Whistleblower Act. TEX. GOV'T CODE ANN. § 554.0035 (West 2012); *Lueck*, 290 S.W.3d at 881.

We will first address whether Nieto has sufficiently alleged that she reported a violation to an appropriate law enforcement authority under the Act. Section 554.002 of the Texas Whistleblower Act provides:

> (a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.
>
> (b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:
>
>> (1) regulate under or enforce the law alleged to be violated in the report; or
>>
>> (2) investigate or prosecute a violation of criminal law.

5

An employee's good faith belief that she reported to an appropriate law enforcement authority means that "(1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and (2) the employee's belief was reasonable in light of the employee's training and experience." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). The employee's belief must be objectively reasonable, meaning a reasonably prudent employee in similar circumstances would have thought the reported-to entity was an appropriate law enforcement authority under the Act. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex. 2013).

In *Gentilello*, the supreme court held that Dr. Gentilello did not have an objectively reasonable belief that his supervisor was an appropriate law enforcement authority because, "[g]iven his training and expertise, he should have known that his supervisor's purely internal authority was not law enforcement but law compliance." *Id.* at 684. Dr. Gentilello pointed to the hospital's internal guidelines regarding Medicare/Medicaid compliance for support that he had a good faith belief that his supervisor was an appropriate law enforcement authority. *Id.* at 688. The hospital's compliance program provided that Dr. Gentilello's supervisor was responsible for ensuring the hospital complied with Medicare/Medicaid laws. *Id.*

The supreme court held that the jurisdictional evidence must show more than internal reporting policies and anti-retaliation language in an employee manual. *Id.* at 682. "Merely overseeing adherence, including urging employees to report violations internally, is insufficient under the Texas Whistleblower Act." *Id.* at 689. The supreme court also explained that, as a legal matter, only the United States Secretary of Health and Human Services can regulate or enforce Medicare/Medicaid rules. *Id.* at 685.

6

Like Dr. Gentilello, Nieto claims that her belief that Carroll was an appropriate law enforcement authority was reasonable based on her training and experience because of PBCC's directives for reporting violations of the compliance program or applicable law. PBCC encouraged employees to report violations, such as acts of fraud observed by Nieto. PBCC's Compliance Plan contains a "reporting ladder" that instructs employees to report first to their immediate supervisor, second to higher level management, and third to the compliance officer. PBCC's Administrative Policy governing fraud and abuse compliance directs employees to report violations directly to the compliance officer. The Administrative Policy also provides that concerns of possible retaliation or harassment are to be reported to the executive director or compliance officer. Compliance Officer Mayes testified in her deposition that she believed that Carroll was an appropriate person to whom to report fraud.

Nieto contends that Dr. Gentilello was a more educated and sophisticated person than she was and, thus, should have been held to a higher standard. She points out that he was a medical doctor, a professor of surgery, a department chair, and a chaired faculty member. At the time of her resignation, she was twenty-nine years old and had graduated from the University of Texas of the Permian Basin with a major in biology and psychology. She argues that, based on her training and experience, her belief was objectively reasonable. We disagree.

To determine whether her belief was objectively reasonable, we look to whether a reasonably prudent employee in similar circumstances would have thought the reported-to entity was an appropriate law enforcement authority under the Act. *Id.* at 683. We cannot say that a 29-year-old with an undergraduate degree would believe that the executive director or the compliance officer at PBCC regulated or enforced Medicaid/Medicare rules outside of PBCC. Nothing in the Compliance Plan or the Administrative Policy governing fraud and abuse

compliance suggests that the executive director or the compliance officer can regulate, enforce, investigate, or prosecute violations. The plan and policy specifically relate to PBCC's goal of *complying* with the laws and regulations that apply to PBCC. Under the Administrative Policy, the compliance officer is required to maintain a log of each reported violation in order to improve the quality of healthcare provided by PBCC. The log is treated as a confidential document and is only accessible to certain PBCC employees. The compliance officer is also required to notify the appropriate supervisor of the compliance issue, and the supervisor is responsible for the development of a corrective action plan. Corrective action may require *external disclosure to the appropriate oversight body*. A reasonably prudent employee who had been provided with these PBCC documents could not objectively believe that the compliance officer or the executive director was an appropriate law enforcement authority as defined under the Act. An appropriate law enforcement authority must actually be responsible for regulating or enforcing the law allegedly violated, not merely responsible for ensuring internal compliance with the law. *Id.* at 685; *see also Ysleta Indep. Sch. Dist. v. Franco*, No. 13-0072, 2013 WL 6509471, at *2 (Tex. Dec. 13, 2013) (holding evidence that school district officials were responsible for internal compliance does not support objective, good faith belief that plaintiff reported violation to appropriate law enforcement authority); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (holding same).[2]

Nieto points out that the supreme court did not hold that an internal report can never give rise to a claim under the Whistleblower Act. *Id.* at 686. However, the supreme court's example of when an internal report might be sufficient under

---

[2]In a letter brief, Nieto also contends that *Franco* and *Farran* are distinguishable because she was considerably less sophisticated than Franco and Farran; Franco and Farran were managers, and she was a rank-and-file employee. For the same reasons that we find this case to be indistinguishable from *Gentilello*, we find it to be indistinguishable from *Franco* and *Farran*.

the Whistleblower Act was when an employee of a police department reported to her supervisor that her police partner was dealing narcotics. *Id.* Therefore, in a situation where an employee works for a governmental entity that regulates or enforces the law that the employee is alleging has been violated, an internal report may meet the jurisdictional requirements of the Whistleblower Act. That is not the situation here.

We hold that Nieto failed to sufficiently allege that she reported a violation of law to an appropriate law enforcement authority as defined under the Act. The trial court did not err when it sustained PBCC's plea to the jurisdiction. We overrule Nieto's fourth issue.

Because we have found that the trial court did not err when it sustained PBCC's plea to the jurisdiction on the ground that Nieto failed to allege sufficient facts to show that she reported a violation of law to an appropriate law enforcement authority, it is not necessary for us to determine whether the trial court erred when it sustained PBCC's plea on the grounds Nieto raises in her first three issues. *See* TEX. R. APP. P. 47.1.

We affirm the order of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE

January 30, 2014

Panel consists of: Wright, C.J.,
Bailey, J., and McCall.[3]

Willson, J., not participating.

---

[3]Terry McCall, Former Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.