

## NUMBER 13-13-00265-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CORNELIO MORALES,                  Appellant,

v.

HIDALGO COUNTY IRRIGATION DISTRICT NO. 6,     Appellee.

### On appeal from the 398th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

In this whistleblower case brought against appellee Hidalgo County Irrigation District No. 6 (the District), appellant Cornelio Morales challenges the trial court's order granting a plea to the jurisdiction filed by the District, which dismissed his claims with prejudice. By two issues, Morales argues that: (1) he pled sufficient facts establishing

waiver of the District's governmental immunity; and (2) the trial court erred in denying his motion for sanctions and to compel discovery. We reverse and remand.

## I. Background

The following facts were drawn from Morales's live petition. In August 1998, the District hired Morales as its General Manager. Subject to oversight by the District's Board of Directors, Morales had full authority to manage and operate the District's affairs.

Morales alleges that, on June 21, 2010, Board President Oscar Garza

> summoned [Morales] to his business, Cabrito Meat Market, located in Mission, Hidalgo County, Texas, to speak with [Morales] about an item that [Morales] put on the agenda to be posted for a Board meeting. Mr. Garza did [not] want the item on the agenda. [Morales] told Mr. Garza that a Board member had asked him to put it on the agenda, it was going to be on the agenda, and the Board had given him authority to set the agenda. Mr. Garza [assaulted Morales] to coerce [him] to take the item off of the agenda. After [Morales] was assaulted by Mr. Garza, [he] agreed to take the item off the agenda.

Morales suffered neck and back pain as a result of the assault. In his petition, Morales alleged that he reported the assault to the Hidalgo County Sheriff's Department "[i]n or about 2010."

On July 15, 2010, Morales reported the above incident to the District's general counsel. Morales also informed the general counsel, in writing, of what he believed to be other acts of misconduct committed by Garza and other Board members and District employees, including the following: (1) using the District's equipment and labor for Garza's personal purposes; (2) using District employees to divert more water to Garza's land than he purchased; (3) obtaining reimbursement by the District for an unnecessary conference Garza attended; (4) using the District's property for Garza's family's recreational purposes, which created potential liability for the District; (5) arranging for

2

Garza's wife's real estate agency to represent the District in a land deal, which prevented a competing real estate agency from earning its already agreed-to commission; (6) using District resources to improve the value of property Garza eventually sold to Hidalgo County at a substantially higher price; (7) attempting to appropriate valuable District property for Garza's own home during the District's move to its new offices; (8) communications between various District employees and Board members in violation of the Texas Open Meetings Act; and (9) arranging for preferential land deals and easement relinquishments for Board members and their business partners.

Morales alleged that he reported the assault and the additional misconduct to the Hidalgo County District Attorney "[i]n or about August or September 2010." He alleged that he provided the district attorney a copy of the written report he had given the District's general counsel describing the foregoing incidents, "which [the district attorney] read." On August 19, 2010, the Board placed Morales on suspension with pay.

On October 7, 2010, Morales and the District's office manager, Macarena Ortiz, sent letters to the Texas Attorney General, various Commissioners on the Texas Commission on Environmental Quality, and State Senator Juan "Chuy" Hinojosa. Each letter was identical and read as follows:

To Whom it May Concern:

We, the HCID6 General Manager, Mr. Cornelio Morales, and Office Manager, Macarena Ortiz, were able to discover potential misconduct that has taken place for the past few years.

According to our inspection of HCID6's minutes, tapes, other relevant documents and accounts from District employees, we realized that Chairman of the Board, Mr. Garza has been using the District to pursue his personal interests.

3

He has demonstrated with his actions and attitude total disrespect and disregard for the well[-]being of [the] rest of the Board members and employees of the District and as of today, he continues to take advantage of the District and to abuse his power as the Chairman of the Board.

Mr. Garza is connected to local politicians and has ties to the District Attorney's Office, Mayor of Mission and other officials with the Hidalgo County and we feel that for this reason, our claim will be ignored if a higher authority does not intervene.

We fear the worse [sic] for the future of the District if this behavior continues. At this time, we are requesting a full investigation of allegations that we [have] include[d] in our report as well as any other misconduct that you may discover during your investigation regarding Mr. Garza and other board members.

Also, keep in mind that the District receives or has received in the past funds from the State of Texas as well as the Federal government. At this time, we do not trust the proper management and application of these funds.

We would like for your investigation to establish legal repercussions and appropriate enforcement. . . .

"[I]n 2010," Ortiz also sent similar letters to the Federal Bureau of Investigations and the State Auditor's Office.[1] Morales alleged that he attached the misconduct report he had previously given to the district attorney to each of the five letters. Morales alleged that Ortiz was terminated on January 1, 2011, that she filed a whistleblower lawsuit against the District, and eventually settled her claims with the District.

Morales then alleged the following chain of events which ended in his termination:

After [Morales] made one or more of his reports as described above,

---

[1] The petition does not specify in which month the letters were sent to the FBI and State Auditor's office. Moreover, the letters did not contain the paragraph describing Garza's relationship with local political officials. We also note that although Morales alleges in his petition that he participated in sending the FBI and State Auditor letters, he did not sign these letters. Instead, Ortiz was the signatory and began the letters as follows: "During the events that lead to the suspension of General Manager of Hidalgo County Irrigation District No. 6 Mr. Cornelio Morales, I, Macarena Ortiz, Office Manager with the Hidalgo County Irrigation District No. 6 was able to discover potential misconduct that has taken place for the past few years."

4

Defendant's Board of Directors hired an attorney to investigate [Morales] to cover up, discredit, and defend against the allegations of misconduct reported by [Morales] to [the District's general counsel] and the law enforcement and regulating authorities [with which he met and to which he sent letters]. The attorney's report was issued in July 2011, and given to the Board. The report did not recommend [] termination of [Morales's] employment.

On or about August 25, 2011, there was a Board meeting of the Board of Directors of [the District]. Three of the five Board members, including [Garza,] voted to terminate [Morales]. The Board was aware of the misconduct report, and its placement in the hands of law enforcement authorities at the time of the vote.

At the time of his termination, [Morales] was an excellent employee and General Manager, had served as Defendant's General Manager for about 13 years, and had committed no misconduct that would warrant firing.

On August 31, 2011, Morales sued the District, alleging whistleblower claims under section 554.002 of the government code. *See* TEX. GOV'T CODE ANN. § 554.002 (West, Westlaw through 2013 3d C.S.). Morales claimed that he reported violations of law to "appropriate law enforcement authorities" that he believed "in good faith [were] authorized to regulate under or enforce the law alleged to be violated in the report or investigate or prosecute a violation of criminal law." Morales claimed that an "adverse personnel action"—his termination—was taken against him after he filed the reports.

On September 7, 2012, the District filed a plea to the jurisdiction, arguing that Morales failed to allege sufficient facts to waive the District's immunity from suit. The District argued that Morales's petition did not "set forth what specific violations of law he reported to what specific law enforcement agency." The District argued that Morales failed to allege facts showing that: (1) he made his report to the appropriate law enforcement authority; (2) the assault was the sort of violation of law the whistleblower act is meant to cover because Garza was not an employee of the District; and (3) there

5

was a causal connection between the first adverse employment action, which was his August 2010 suspension, and his reports to law enforcement, which occurred after that date. The District's plea was based solely on Morales's pleadings; the District attached no evidence to the plea.

On October 3, 2012, the trial court held a hearing on the District's plea, at which the parties presented legal arguments but no evidence. Several months later, on February 20, 2013, the trial court granted the District's plea and dismissed Morales's claim with prejudice.

Morales filed a motion for new trial on March 21, 2013. The District responded and attached evidence. One of the District's exhibits was the written report of the attorney it had hired to investigate Morales.[2] The District's second exhibit was a copy of a Board meeting agenda, which showed that the Board approved the hiring of the investigator immediately following Morales's August 19, 2011 suspension.

The trial court held a hearing on Morales's motion for new trial on April 24, 2013, and the motion was later overruled by operation of law. This appeal followed.

## II. Plea to the Jurisdiction

By his first issue, Morales argues that the trial court erred in granting the District's

---

[2] In his report, the investigator noted that he was retained to investigate "any allegations of misconduct, whether alleged against management, employees, or board members," but the report only contains details of his investigation of allegations against Morales. He stated that "the investigation involved interviewing numerous employees, reviewing internal file documents, and reviewing official state and county records." In the report, the investigator stated that based on his interviews with various employees, "one can reasonably conclude" that: (1) because of his "well-known" aggressive demeanor, Morales likely assaulted Garza; (2) Morales committed nepotism by hiring his brother as a District employee; (3) Morales and his brother ran a "'cock-fighting' enterprise" on District property; (4) Morales behaved inappropriately toward staff, including hostility toward some and overt favoritism toward others; and (4) Morales failed to maintain proper financial and other professional standards for the District.

6

plea to the jurisdiction. Morales argues that his pleadings contain sufficient facts showing each of the required jurisdictional elements of a whistleblower claim such that the District's immunity was waived and the trial court had subject-matter jurisdiction.

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Morris*, 129 S.W.3d at 807. When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Morris*, 129 S.W.3d at 807. We examine the pleader's intent and construe the pleadings in the plaintiff's favor. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Ramirez*, 74 S.W.3d at 867. A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings affirmatively negate the existence of

7

jurisdiction.  *Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867.

## B.  Applicable Law

The Texas Supreme Court has long recognized that sovereign and governmental immunity, unless waived, protects the State of Texas and its subdivisions from lawsuits for damages, absent legislative consent to sue.  *See Miranda*, 133 S.W.3d at 224; *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 725–26 (Tex. App.—Corpus Christi 2007, no pet.).  The Texas Whistleblower Act waives governmental immunity if the plaintiff alleges sufficient facts to show that (1) he was a public employee who, (2) in good faith, reported a violation of the law by his governmental entity employer or another public employees (3) to an appropriate law enforcement agency and (4) was terminated or suffered another adverse employment action as a result of his report.  TEX. GOV'T CODE ANN. § 554.002, § 554.0035 (West, Westlaw through 2013 3d C.S.); *see City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *State v. Lueck*, 290 S.W.3d 876, 882–83 (Tex. 2009).

The Whistleblower Act defines "law" as a state or federal statute, an ordinance of a local governmental entity, or "a rule adopted under a statute or ordinance."  TEX. GOV'T CODE ANN. § 554.001(1) (West, Westlaw through 2013 3d C.S.).  An appropriate law enforcement authority is a part of a state entity that the employee, in good faith, believes is authorized (1) to regulate under or to enforce the allegedly violated law, or (2) to investigate or prosecute a violation of criminal law.  *Id.* § 554.002(b).  Finally, "[t]o show causation, a public employee must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when

8

it did if the employee had not reported the illegal conduct.'"  *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 656 (Tex. 2013) (quoting *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000)); *see Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 667 (Tex. App.—Corpus Christi 2004, no pet.) ("The plaintiff is required to establish a 'but for' causal nexus between the report of misconduct and the employer's actions." (citations omitted)).

The good-faith requirement applies to both the violation of law and appropriate law enforcement elements.  *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 856–57 (Tex. 2013); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683–84 (Tex. 2013).  "The good-faith inquiry under the Whistleblower Act has both subjective and objective components," which require that the plaintiff must have believed he was reporting conduct that was a violation of law to an entity with the requisite enforcement authority and his belief must have been reasonable given his training and experience. *See Barth*, 403 S.W.3d at 856–57 (citation omitted).

"Although the section 554.002(a) elements must be included within the pleadings so that the court can determine whether they sufficiently allege a violation under the Act to fall within the section 554.0035 waiver, we have urged that the burden of proof with respect to these jurisdictional facts 'does not involve a significant inquiry into the substance of the claims.'"  *Lueck*, 290 S.W.3d at 884 (quoting *Bland*, 34 S.W.3d at 554; citing *Miranda*, 133 S.W.3d at 235).  "The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached."  *Bland*, 34 S.W.3d at 554.

9

### C. Analysis

Because the District did not produce any evidence with its plea to show jurisdictional facts that would defeat the trial court's jurisdiction, we base our analysis on Morales's pleadings.[3] *See Whitley*, 104 S.W.3d at 542; *Morris*, 129 S.W.3d at 807. And we believe Morales alleged sufficient facts in his petition related to each jurisdictional element. We will address each in turn.[4]

#### 1. Violation of Law

Morales alleged in his petition numerous acts of misconduct by District Board members and employees that violated provisions of the Texas Penal Code, Texas Government Code, and United States Code. For example, Morales alleged that Board President Garza assaulted him in order to coerce him into removing certain items from the meeting agenda; used District property and other resources for his own personal gain and to the financial advantage of his family; leveraged his position on the board to the advantage of his own and his partners financial interests[5]; and appropriated District property for his home. *See* TEX. PENAL CODE ANN. § 22.01 (West, Westlaw through 2013 3d C.S.) (assault), §§ 39.02, .03, .06 (West, Westlaw through 2013 3d C.S.) (abuse of office offenses, including Abuse of Official Capacity, Official Oppression, and Misuse of

---

[3] The District attached no evidence refuting Morales's allegations in its plea to the jurisdiction. In its response to Morales's motion for new trial, the District attached the report of the attorney it hired to investigate Morales. But that evidence was not before the trial court when it made its ruling on the District's plea, so we do not consider it on appeal. *See Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted.").

[4] It is undisputed that Morales was a public employee.

[5] Morales also alleged that Board member Louis Eckroat financially benefited from certain decisions made by the Board regarding various easements.

10

Official Information); *see also* 18 U.S.C. § 1962 (2012) (Racketeer Influenced and Corrupt Organizations Act (RICO)). Morales also alleged that Garza and other Board members and employees engaged in private communications that violated the Texas Open Meetings Act and amounted to a conspiracy to commit that violation. *See* TEX. GOV'T CODE ANN. §§ 551.143–.145 (West, Westlaw through 2013 3d C.S.).

With regard to the assault allegation, in particular, the District suggests that Morales's account of the events at Garza's meat market is inaccurate. But we must take as true the allegations in Morales's petition. The District also argues that "[a]ssault charges—personal criminal attacks—[were] not official activities" and, therefore, do not "fall within the scope of the Whistleblower Act." We are not persuaded. Morales alleged more than a simple assault with personal motives. He alleged that Garza assaulted him to coerce him to remove an item from the Board's meeting agenda. Arguably, Garza was acting in his "official capacity" as Board President when he attempted to use violence to convince Morales to comply with his request; in other words, Garza's criminal act, in these circumstances, was "detrimental to the public good or society in general," not merely to the relationship between the two men. *See City of Cockrell Hill v. Johnson*, 48 S.W.3d 887, 896 (Tex. App.—Fort Worth 2001, pet. denied).

The District also argues that Morales's reports were not clear enough to give the agencies to which he reported notice of the violations he was alleging. The District argues that, at most, the report shows "potential misconduct," which is akin to the "warning[s]" of regulatory non-compliance held not to be violations of law in *State v. Lueck*. *See* 290 S.W.3d at 885. We disagree. First, despite the title of Morales's report, it clearly identifies instances of criminal violations by the Board and its employees.

11

That Morales labeled it "misconduct" does not detract from this fact. Second, the "misconduct" detailed by Morales in his report was not a warning of potential, future non-compliance, as was the case in *Lueck*. *See id.* Rather, his report contained allegations of violations that had already occurred. We are, again, not persuaded by the District's assertions to the contrary.

In short, the acts of misconduct alleged by Morales were clearly violations of Texas and Federal statutes. *See* TEX. GOV'T CODE ANN. § 554.001(1). And that these acts were violations of law was both a subjectively and an objectively reasonable conclusion; therefore, Morales's belief that this misconduct violated the law was a good-faith belief under the law. *See Barth*, 403 S.W.3d at 856–57.

### 2. Appropriate Law Enforcement

The facts alleged by Morales were also sufficient to show that he made good-faith reports of the foregoing violations to appropriate law enforcement authority. He reported Garza's assault to both the Hidalgo County Sheriff's Department and District Attorney shortly after its occurrence. The sheriff was the entity with authority to arrest Garza, and the district attorney's office was the entity that could bring criminal assault charges against Garza. Although the District suggests in its brief that Morales never met with the District Attorney, Morales alleged in his petition that the District Attorney read the misconduct report that contained an account of the assault. Under the standard of review, we must accept as true all assertions in Morales's petition. *See Whitley*, 104 S.W.3d at 542.

Further, we believe that Morales's reports of various abuses of power and open meetings act violations were sent to the appropriate agencies. The misconduct report detailing those violations was sent to: the District Attorney, who had authority to bring

12

any criminal charges, including the abuse of power charges and open meetings act violations; the FBI, which had the authority to investigate any federal crime implicated by the Board's conduct; the Texas Attorney General's Office, which sometimes participates in criminal prosecutions, *see Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 298 (Tex. App.—Austin 1996, no writ) ("An assistant attorney general may . . . perform the duties of the county or district attorney or otherwise assist in criminal prosecutions on appointment of a district judge in certain circumstances or at the request of the county or district attorney."); and the State Auditor's Office, which has the power to investigate entities that receive State funds and to report to and coordinate with law enforcement if it discovers fraud. *See* TEX. GOV'T CODE ANN. §§ 321.013, 321.0136 321.016(b), 321.022 (West, Westlaw through 2013 3d C.S.).[6] And for Morales, as General Manager of the District with over a decade of experience running its affairs, it was reasonable to believe that the foregoing law enforcement authorities were the appropriate agencies to which he should report any corruption-related crimes.

### 3. Causation

Finally, we determine whether Morales alleged sufficient facts to show that he would not have been terminated but for his reports to law enforcement. Morales's

---

[6] The District suggested to the trial court that because only Ortiz signed the letters to the State Auditor's Office and FBI, they cannot be considered reports by Morales to those agencies. But Morales's petition includes allegations suggesting that both he and Ortiz were involved in sending those reports. And we must liberally construe Morales's petition and take as true those allegations. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

The District also argues that it would have been unreasonable for Morales to believe that the Texas Commission on Environmental Quality and the office of State Senator Juan "Chuy" Hinojosa would have had any authority to rectify the wrongs alleged by Morales. We agree. But this conclusion is irrelevant and not dispositive given our ultimate holding that Morales's alleged reports to the District Attorney, Attorney General, and State Auditor's office did comply with the statute.

petition contains facts showing that he was suspended with pay on August 19, 2010 after the assault by Garza, which he reported to the District's general counsel, along with the remainder of the misconduct discussed above. While on suspension, Morales made further reports to, in relevant part, the District Attorney, the FBI, the Attorney General, and the State Auditor's Office. Morales alleged that after he made these reports, the District hired an attorney to investigate him. Morales further alleged that the employee with whom he made the reports, Ortiz, was terminated by the District on January 1, 2011; that she filed whistleblower claims; and that she eventually settled with the District. In July 2011, the attorney hired to investigate Morales issued his report, which did not recommend Morales's termination. On August 25, 2011, the Board voted to terminate Morales's employment. Morales alleged that "[t]he Board was aware of the misconduct report, and its placement in the hands of law enforcement authorities at the time of the vote." Finally, Morales alleged that, "[a]t the time of his termination, [he] was an excellent employee and General Manager, had served as Defendant's General Manager for about 13 years, and had committed no misconduct that would warrant firing."

The District argues that because Morales suffered an adverse employment action—his suspension—before he made any of his reports, he cannot show that his subsequent termination was the result of the reports. *See Cnty. of Bexar v. Steward*, 139 S.W.3d 354, 358 (Tex. App.—San Antonio 2004, no pet.) (holding that, where the alleged discriminatory action was a demotion, a report that was made after the plaintiff received notice of that demotion failed to meet the causation element for a whistleblower claim); *see also Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 656 (Tex. 2013). We find these cases distinguishable. In both, the adverse employment action that broke

14

the causal chain was merely a formal precursor to the subsequent action about which the employee complained. In *Steward*, the plaintiff was given notice of his demotion a month prior to his actual demotion. 139 S.W.3d at 356–57. In the intervening time, the plaintiff made a report to internal affairs. *Id.* But because the decision had already been made to demote the plaintiff, his intervening report could not have been the cause of the demotion. *Id.* at 358. Similarly, in *Farran*, the plaintiff had already been given notice that his school district employee intended to terminate his employment when he made a complaint to FBI of alleged illegal conduct by other employees. 409 S.W.3d at 656. Again, because the decision had already been made to terminate the plaintiff, the complaint to the FBI could not have been the cause of the termination. *Id.*

Morales's suspension with pay is not the same type of adverse employment action as the notices given to the plaintiffs in *Steward* and *Ferran*. The District makes no argument and presented no evidence that termination of employment is the foregone conclusion to a period of suspension, so the causal chain is not broken in the same way. We are not persuaded that the authority cited by the District in this regard is applicable to facts of this case.

Taking Morales's allegations as true, as we must do under the standard of review, *see Whitley*, 104 S.W.3d at 542, we conclude that he alleged sufficient facts to show that after he reported a violation of the law in good faith to an appropriate law enforcement authority, he suffered a discriminatory action by the District—his termination—that would not have occurred when it did had Morales not reported the illegal conduct. *See Farran*, 409 S.W.3d at 656.

15

### 4. Summary

Because Morales alleged facts sufficient to show each of the elements of his whistleblower claim, the trial court erred in granting the District's plea to the jurisdiction. Morales's first issue is sustained.

## III. Motion to Compel

By his second issue, Morales argues that the trial court erred in denying his motion to compel the depositions of certain Board members.[7]

Morales sent a letter to the District's counsel on July 17, 2012, requesting deposition dates for the Board members. After counsel failed to respond, Morales issued deposition notices. The District filed a motion to quash the depositions. On July 27, 2012, Morales filed a motion to compel the depositions. The trial court set the motion to compel for hearing on August 22, but in the meantime, the parties agreed for the depositions to be set on September 11 and 12, 2012.

On September 10, 2012, Morales received a letter from the District notifying him that because it had filed a plea to the jurisdiction, the District would not "be in a position to present the Hidalgo County Irrigation District No. 6 board members for deposition until the issue of jurisdiction is resolved." Morales then filed a motion for sanctions and/or to compel the depositions. At a hearing, the trial court stated, "The Court is not going to grant your motion to compel. The Court is going to hold it in abeyance until I decide the motion for jurisdiction. . . . [The motion to compel] will be carried along [with the case.]"

---

[7] Morales's argument regarding the sanctions portion of his motion is inadequately briefed; he cited no legal authority and made no substantive argument on that matter. *See* TEX. R. APP. P. 38.1. He has therefore waived our review of the sanctions issue.

16

The trial court then granted the District's plea to the jurisdiction on February 20, 2013.

We conclude that when the trial court granted the District's plea, it rendered Morales's motion to compel moot. In other words, by dismissing the case, the trial court extinguished the controversy over the discovery dispute. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings."); *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (stating that, for a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought). Any ruling by this Court on Morales's motion to compel would be premature at this stage. We overrule Morales's second issue.

## IV. Conclusion

We reverse the order of the trial court granting the plea to the jurisdiction and remand for further proceedings.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 19th
day of March, 2015.

17