In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00442-CV**

_____

**DAVID JONES, Appellant**

**V.**

**CITY OF PORT ARTHUR, TEXAS, Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-193,143**

**MEMORANDUM OPINION**

David Jones was employed as an operator of a residential garbage truck with the City of Port Arthur, Texas (the "City"). After he was terminated and his administrative appeal to the City denied, Jones sued the City for violation of the Texas Whistleblower Act. *See generally* Tex. Gov't Code Ann. §§ 554.001–.010 (West 2012); *Dallas Area Rapid Transit v. Carr*, 309 S.W.3d 174, 175 (Tex. App.—Dallas 2010, pet. denied) (explaining that chapter 554 of the Texas Government Code is commonly referred to as the "Texas Whistleblower Act").

1

Jones sought damages and attorney's fees. The City filed a plea to the jurisdiction and traditional and no-evidence motions for summary judgment. The trial court granted the City's plea to the jurisdiction and motions for summary judgment and dismissed Jones's claims against the City. On appeal, Jones contends the trial court erred and abused its discretion by granting the City's plea to the jurisdiction and motions for summary judgment because (1) he presented numerous issues of material fact that should have been resolved by a jury, and (2) he demonstrated that the City violated the Texas Whistleblower Act. We affirm the trial court's order granting the City's plea to the jurisdiction.

## I.      Factual Background

According to Jones's Third Amended Petition, on May 23, 2012, he was employed with the City as an operator of a residential garbage truck. Jones believed the truck assigned to him that day, Truck 1713, was "leaking potentially flammable hydraulic fluid used by the truck's hydraulic lift system." Jones reported the malfunction with Truck 1713 to the senior mechanic in the City's Operations Center of the Public Works Department. Jones alleges that after the senior mechanic indicated it was a small leak, his immediate supervisor instructed him to perform his garbage collection duties using Truck 1713. When Jones refused to operate Truck 1713, he was told to report to Anitra Smith, the City's

2

Solid Waste Management Division Superintendent. Jones alleges that he informed Smith that he did not want to operate Truck 1713 "because of the potential environmental and safety hazards that the hydraulic leak posed to the public and to the driver of the truck." Jones claims that he told Smith he believed the operation of Truck 1713 was "illegal and that he could be cited by law enforcement" for its operation. According to Jones, he requested another truck to complete his route, or alternatively asked to delay his route until Truck 1713's leak could be repaired. Jones contends that Smith ordered him to operate the leaking truck that day, and when he refused to comply, Smith "sent him home from work indefinitely, as an adverse and disciplinary employment action."

According to Jones's pleading, on June 11, 2012, he filed an appeal of his termination to the City's Appeals Committee. Jones alleges that a hearing was held and that at the hearing, he presented his complaints regarding the condition of the garbage trucks and his belief that he had been terminated in retaliation "for his good faith reports of multiple violations of law by the City pertaining to environmental compliance and safety and workplace safety." On June 28, 2012, Jones was notified by John Comeaux, the acting City Manager, that the Appeals Committee recommended Jones's termination be upheld and that Comeaux had decided to follow the Committee's recommendation.

3

Jones filed suit against the City on September 12, 2012. After the trial court granted the City's plea to the jurisdiction and motions for summary judgment, Jones filed a motion for new trial, which the trial court denied. Thereafter, Jones filed a timely notice of appeal.

## II. Plea to the Jurisdiction

A trial court lacks subject matter jurisdiction over a suit against a governmental unit enjoying immunity from suit. *City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A party may challenge a trial court's subject matter jurisdiction by asserting a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's decision on a plea to the jurisdiction *de novo*. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

A plaintiff has the burden to allege facts demonstrating jurisdiction, and we construe the plaintiff's pleadings liberally in the plaintiff's favor. *See Miranda*, 133 S.W.3d at 226. When a governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we must consider that evidence when necessary to resolve the jurisdictional issues raised. *Ranjel*, 407 S.W.3d at 887. In our determination, we must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and

4

resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, then the trial court cannot grant the plea, and the issue must be resolved by the factfinder. *Id*. at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id*. at 228. This standard of review generally mirrors that of a summary judgment. *Id*.

The City of Port Arthur is a municipality and thus is a local governmental entity. *See* Tex. Loc. Gov't Code Ann. § 271.151(3)(A) (West 2016); *Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex. 2006) ("A local governmental entity is defined to include a municipality."). Local governmental entities are immune from suit unless the legislature expressly waives governmental immunity. *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014). Immunity from suit deprives the courts of jurisdiction and therefore completely bars a plaintiff's claim. *Id*. Under certain circumstances, the Texas Whistleblower Act ("the Act") waives a local governmental entity's immunity from suit for claims of retaliatory discharge under the Act. Tex. Gov't Code Ann. § 554.0035; *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). The elements of a whistleblower claim are jurisdictional when necessary to ascertain

5

whether a plaintiff has adequately alleged a violation of the Act. *Lueck,* 290 S.W.3d at 881, 884.

In the City's plea to the jurisdiction, the City maintained that Jones's whistleblower suit was barred by governmental immunity because Jones failed to meet the required jurisdictional element. The City specifically argued in relevant part that the trial court lacked jurisdiction over Jones's whistleblower claim because: (1) there is no pleading or evidence that Jones filed a report of illegal activity with an appropriate law-enforcement authority prior to the time the City decided to terminate Jones; (2) there is no pleading or evidence that any of the decision-makers had knowledge of Jones's reports to the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") or to the Texas Commission on Environmental Quality ("TCEQ") before Jones was terminated on June 8, 2012; and (3) there is no causal connection that indicates that but for Jones's reports he would not have been terminated under the circumstances. Both parties submitted evidence relevant to the jurisdictional challenge for the trial court's consideration. *See Miranda*, 133 S.W.3d at 227 & n.6, 231 (explaining that in the context of a plea to the jurisdiction, it is sufficient that the party previously filed documentary evidence as an attachment to its plea to the jurisdiction or a response thereto).

### III. The Texas Whistleblower Act

The Texas Whistleblower Act prohibits governmental entities on the state and local level from suspending, terminating, or taking adverse personnel actions against a public employee who, in good faith, reports a violation of law committed by the employing governmental entity or another public employee to an appropriate law-enforcement authority. Tex. Gov't Code Ann. § 554.002(a). The City's plea to the jurisdiction did not contest that Jones was a public employee. However, the City contested the other elements Jones had to plead to qualify for the Act's waiver of immunity, including that Jones made a good-faith report of a violation of law, that he made a good-faith report to an appropriate law-enforcement authority, and that he suffered retaliation as a result of making a qualifying report.

### A. Good-Faith Report of a Violation of Law

The Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against a public employee who reports in good faith a "violation of law[.]" *Id*. The Act defines "law" as "(A) a state or federal statute; (B) an ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." *Id*. § 554.001(1). The Act does not require that the employee identify in the report the specific law he asserts was violated, but there

must be some law prohibiting the complained-of-conduct. *Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 323 (Tex. App.—Dallas 2012, no pet.). And, the employee-plaintiff must identify the specific law he asserts was violated at some point during the litigation. *Id.* at 327. "A plaintiff appealing a dismissal of a Whistleblower claim for want of jurisdiction may not assert on appeal that the conduct described in the report violates a law not identified in the trial court." *Id.*

An employee's report of a violation of law must be in good faith. Tex. Gov't Code Ann. § 554.002. The employee "must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience." *Gonzalez*, 325 S.W.3d at 626. A report that a violation of the law might occur in the future is not a good-faith report of an existing or past violation of the law. *See id.* at 627; *Lueck*, 290 S.W.3d at 885 (noting that report of possible future regulatory non-compliance does not equate to reporting a violation of the law).

## B. Appropriate Law-Enforcement Authority

Section 554.002(b) of the Government Code defines when a public employee has made a report to an "appropriate law[-]enforcement] authority" under the Whistleblower Act:

[A] report is made to an appropriate law[-]enforcement authority if the authority is a part of a state or local governmental entity or of the

federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

*Id.* § 554.002(b). Under the statutory definition, it is not enough that a governmental entity has general authority to regulate, enforce, investigate, or prosecute. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 319 (Tex. 2002). Rather, the entity must have authority to regulate under or enforce the law alleged to be violated in the public employee's report, or to investigate or prosecute a violation a violation of criminal law. *Id.* at 320. An entity's authority to internally discipline its own employees for an alleged violation is insufficient to make that entity an appropriate law-enforcement authority. *Id.* at 320, 321. An entity "must have outward-looking powers." *McMillen v. Tex. Health & Human Servs. Comm'n*, 485 S.W.3d 427, 429 (Tex. 2016). "[F]or an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013). The power to "urge compliance or purge

noncompliance" with the law is not included in the Act's limited definition of law enforcement powers qualifying an entity as an appropriate law-enforcement authority. *Id.* at 684. The Act included "law-*enforcement* authority" and not "law-*compliance* authority[.]" *See id.* at 685. An entity may itself be subject to regulation, but not charged with subjecting others to regulation; "being regulated is not the same as being the regulator." *Id.*

Under certain circumstances, however, a Whistleblower Act report may be made internally. *Id.* at 686. For example, when an employee works for an entity with the authority to investigate the citizenry at large for violations of the same crime reported by the employee an internal report may be internal:

> A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large.

*Id.*

The statute provides that even if the entity is not an appropriate law-enforcement authority, the public employee may still obtain Whistleblower Act protection if the employee can show that he in good faith believed that the entity to which he reported the violation of the law was an appropriate law-enforcement authority. *Needham*, 82 S.W.3d at 320. However, it is not enough that an employee

10

had a strongly felt or sincerely held belief that he had reported to the appropriate law-enforcement entity. *Gentilello*, 398 S.W.3d at 683. The "good-faith" requirement in the Act has both objective and subjective elements. *Id*. To be in "good faith," an employee must not just believe the entity was an appropriate law-enforcement authority under the Act, but his belief must be "reasonable in light of the employee's training and experience." *Needham*, 82 S.W.3d at 321. A plaintiff can only satisfy the good-faith requirement if he is able to show that a reasonably prudent public employee in similar circumstances would have believed he had made the report to an appropriate authority. *Id*. at 320–21; *see also Gentilello*, 398 S.W.3d at 683. It is not enough that the employee believed the entity to which he reported had the power to discipline its own employees or investigate internally the alleged violation of the law. *Gentilello*, 398 S.W.3d at 686; *Needham*, 82 S.W.3d at 321. Likewise, a belief that the entity could forward the report of the violation of the law on to another entity for prosecution is not evidence of a good-faith belief. *Needham*, 82 S.W.3d at 321; *Office of the Att'y Gen. v. Weatherspoon*, 472 S.W.3d 280, 282 (Tex. 2015). Furthermore, that an entity has a division within it charged with investigating and prosecuting crimes, does not transform the entire entity into an appropriate law-enforcement entity. *Weatherspoon*, 472 S.W.3d at 283. Rather, the plaintiff-employee must show that he reported directly to a division or

11

department within the entity that has the appropriate law-enforcement authority contemplated by the Act. *See Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014).

In *Okoli*, the plaintiff was an employee of the Texas Department of Human Services ("TDHS"). *Id*. at 612. He was fired after reporting misconduct within the TDHS to his supervisors. *Id*. at 613. The plaintiff filed suit under the Whistleblower Act. *Id*. TDHS argued that the trial court lacked jurisdiction because the plaintiff failed to make a good-faith report of a violation of law to an appropriate law-enforcement authority. *Id*. The Court considered whether the plaintiff's report was made to an appropriate law-enforcement authority when he reported the violation to his supervisors, who in turn were required to forward the complaint to the Office of Inspector General ("OIG"), a division within TDHS that had outward-looking law-enforcement authority. *Id*. at 612-13, 614. The Supreme Court rejected this argument and reiterated that generally "reports up the chain of command are insufficient to trigger the Act's protections." *Id*. at 614. The Court explained that when a public employee has knowledge that "the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting '*to* an appropriate law[-]enforcement authority.'" *Id*. at 615 (quoting Tex. Gov't Code Ann. § 554.002). The Court

further explained that "[t]he fact that the OIG is an internal division of TDHS does not change the analysis." *Id*. at 616. For the OIG to have received the plaintiff's report, someone had to forward the reports to the OIG. *Id*. at 615.

## C.     Adverse Employment Action Caused by Making Report

Even if a plaintiff establishes that he made a good-faith report of a violation of law to an appropriate law-enforcement authority, he must still show that he suffered retaliation as a result of his making the report. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000); *see Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995) ("[A] public employee can recover under the Whistleblower Act only if he proves that he was suspended, terminated or discriminated against 'because' . . . he reported a violation of the law in good faith to an appropriate law enforcement authority"). To establish causation in a Whistleblower Act case, a public employee must demonstrate that after he reported a violation of law in good faith to an appropriate law-enforcement authority, the employee suffered discriminatory conduct by his employer that would not have occurred when it did if the employee had not made the report. *Zimlich*, 29 S.W.3d at 67; *City of Houston v. Levingston*, 221 S.W.3d 204, 226 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (op. on reh'g). That is, a plaintiff "must establish a 'but for' causal nexus between his report of the illegal activity and the employer's

prohibited conduct." *Levingston*, 221 S.W.3d at 226; *see Hurley v. Tarrant Cty.*, 232 S.W.3d 781, 786 (Tex. App.—Fort Worth 2007, no pet.) (explaining that "[t]his causation standard has been described as a 'but for' causal nexus requirement"). However, the plaintiff need not show that the Whistleblower report was the sole reason for the adverse personnel action. *Hinds*, 904 S.W.2d at 634.

A plaintiff can establish a causal link between the adverse employment action and the report of a violation of law through circumstantial evidence, including evidence that the employer (1) had knowledge of the report of a violation of law, (2) expressed a negative attitude toward the employee's report, (3) failed to adhere to established policies regarding employment decisions, (4) subjected the employee to discriminatory treatment in comparison to similarly situated employees, and (5) stated a false reason for the adverse employment decision. *Zimlich*, 29 S.W.3d at 69; *Levingston*, 221 S.W.3d at 226. The plaintiff must show that the person who took the adverse employment action—the decision-maker— knew of the employee's report of illegal conduct. *Harris Cty. v. Vernagallo*, 181 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see also Kirkland v. City of Austin*, No. 03-10-00130-CV, 2012 WL 1149288, at *2 (Tex. App.—Austin Apr. 5, 2012, no pet.) (mem. op) (stating that a plaintiff must show "at a minimum . . . that the person who took the adverse employment action knew

of the employee's report of illegal conduct") (internal quotations omitted)). A trial court's decision to grant a plea to the jurisdiction in a Whistleblower case can be based upon insufficient evidence of causation. *See Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 656 (Tex. 2013).

## D.    Application of the Law to Jones's Reports

Jones contends that he made reports of three different violations of the law, including that the City was operating garbage trucks on the public streets in an unsafe condition; (2) that a City official committed perjury; and (3) that the City had committed "Water Code/Environmental Violations[.]" Jones argues that he reported these violations of the law to various appropriate law-enforcement authorities, including: (1) the City Manager; (2) the Director of Public Works; (3) various members of the City Council; (4) the Superintendent of the City's Solid Waste Division; (5) the City's Appeals Committee; (6) OSHA; and (7) the TCEQ. We analyze each of Jones's reports below to determine if any of his reports qualify him for protection under the Whistleblower Act.

## 1.    Report to the City Manager-John Comeaux

On appeal, Jones argues that John Comeaux, as the City Manager, is an appropriate law-enforcement authority under the Act and that he reported a violation of the law to him. However, Jones's pleadings contain no allegations that

15

he made any reports to the City Manager. There is a letter in the record dated May 23, 2012 and addressed to the "Human Resource Dept." and to the "acting City Manager[.]" On appeal, Jones argues that this letter amounts to a report of a violation of the law to the City Manager. However, Jones does not cite us to any portion of his petition where he properly alleged this letter as a qualifying report under the Act, and we find none. In fact, Jones's petition does not reference the May 23, 2012 letter at all.

Jones had a reasonable opportunity to amend his pleadings in response to the City's plea and in fact previously amended his pleadings twice in response to the City's jurisdictional challenge. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) (explaining that if a plaintiff has been provided a reasonable opportunity to amend his pleadings after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the proper remedy is dismissal). Despite these amendments, Jones has not pleaded facts to establish he made a qualifying report to the City Manager.

Even if Jones had properly alleged this report in his pleadings, we would not be able to find that the report satisfies the requirements of the Act. In the letter, Jones first complains about adverse employment actions he has suffered as a result

16

of posts he made on the Internet criticizing Ross Blackketter, the Director of Public Works for the City, for creating racial tension and oppression within the department. Second, he complains about the City's inconsistent stance on policies. Third, he complains that Smith's action in sending him home was "an attempt to retaliate because [he] 'blew the whistle' on poor vehicle policy and made people aware about discrimination on the part of [Blackketter]."[1]

Jones argues his letter to the City Manager essentially reported a violation of section 547.004(a)(1) of the Texas Transportation Code when he complained that his supervisor asked him to operate a truck that was leaking hydraulic fluids, and when he refused, the City sent him home and allowed someone else to drive the truck. Section 547.004(a)(1) provides that "[a] person commits an offense that is a misdemeanor if the person operates or moves or, as an owner, knowingly permits another to operate or move, a vehicle that . . . is unsafe so as to endanger a person[.]" Tex. Transp. Code Ann. § 547.004(a)(1) (West 2011). A necessary element of finding a person or entity has violated this statute is that the person actually operates the vehicle. *See id*. If the person or entity is the owner of the

---

[1] To the extent that Jones alleges the City took adverse personnel actions against him in retaliation for his reports of discrimination, we note that as a matter of law, retaliation claims by public employees based on reports of discrimination are not actionable under the Texas Whistleblower Act. *See City of Waco v. Lopez*, 259 S.W.3d 147, 155-56 (Tex. 2008); *see also* Tex. Lab. Code Ann. §§ 21.001, 21.055 (West 2015).

17

vehicle, then it is also a necessary element that the person or entity have knowledge of the unsafe nature of the vehicle. *See id*.

Jones's May 23, 2012 letter does not assert that the City knowingly allowed an employee to operate an unsafe vehicle. Rather, in the letter, Jones specifically informed the City Manager that the City's mechanic inspected the truck and found it was safe to operate. Jones informed the City Manager that when he refused to operate the truck, another City employee took the truck out, but ultimately had to return the truck because the leak became worse. Jones, however, does not assert that the leak had progressed to the point that the truck was in an unsafe condition before the employee returned the truck to the garage. Jones does not report that the truck was unsafe or actually operated in an unsafe condition. Jones does not report that the truck posed an environmental or safety risk. Rather, he states very plainly that he refused to drive the truck because he did not want to get "blamed for taking a truck out knowing it is broken." He is very clearly complaining about inconsistent policies regarding truck use and maintenance. We conclude that Jones's report to the City Manager did not describe conduct that would violate section 547.004(a)(1) of the Texas Transportation Code.

Jones may have believed that his letter to the City Manager constituted a report of a violation of law; however, his belief had to have been reasonable based

18

on his training and experience. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 856-57 (Tex. 2013). Jones testified that he graduated from high school and obtained two associates degrees, one in management development and the other in process technology. He served in the United States Marine Corps and was assigned to a supply unit. Jones worked for the Texas Department of Criminal Justice ("TDCJ"), but was terminated from that position based on an allegation that he retaliated against an inmate. In response to his termination, Jones filed a discrimination claim against TDCJ, but the claim was dismissed for failing to "hit all the parameters of race[.]" Jones testified that he has never worked as a mechanic on vehicles and has had no training as a mechanic. Jones does not dispute that the senior mechanic told him the truck was safe to operate that day. We conclude that Jones has failed to present evidence that it was reasonable, in light of his training and experience and the circumstances presented, for him to believe that the conduct he reported to the City Manager—that the City allowed a driver to drive a vehicle the mechanic inspected and deemed safe—was a violation of the law. At most, Jones's letter reflects his dissatisfaction with the City's policies and inconsistent application thereof. As such, the letter cannot form the basis for a report of a violation of law. *See* Tex. Gov't Code Ann. §§ 554.001(1), 554.002(a).

19

**2.      Report to the Director of Public Works-Ross Blackketter**

Next, Jones contends that Blackketter, as the Director of Public Works for the City, was an appropriate law-enforcement authority under the Act. Again, however, our review indicates that Jones's pleadings contain no allegations that he made any reports to Blackketter. Even after amending his pleadings twice to address the City's jurisdictional challenges, Jones has not pleaded facts to establish he made a qualifying report to Blackketter.

Even if Jones had properly pleaded facts to support this contention, the only reports that Jones argues on appeal that he made to Blackketter were not reports he actually made *to* Blackketter, but rather reports Jones made to other City employees that Jones assumes were ultimately forwarded to Blackketter. There is no evidence that Smith told Blackketter that Jones had reported that his truck was unsafe to drive or that there were possible environmental issues with Truck 1713. In fact, Smith testified that she did not tell Blackketter that Jones had reported these issues because, according to Smith, Jones had not reported these issues to her. And, in Blackketter's affidavit, he stated that he was not aware of Jones making any report of any violation of law by the City or its employees prior to his decision to initiate termination proceedings on May 23, 2012. Therefore, we conclude there is no evidence in the record that Jones made a report to Blackketter

as contemplated by the Act. *See* Tex. Gov't Code Ann. § 554.002(b). *See also Okoli*, 440 S.W.3d at 614–15.

### 3. Report to City Council Member-Kerry Thomas

Jones also contends that members of the City Council generally are appropriate law-enforcement authorities. In his brief, Jones argues that he made reports to multiple members of the City Council. However, in his petition and in his appellate brief, Jones only identifies one council member to whom he claims he made a qualifying report—Kerry Thomas. In his Third Amended Petition, Jones alleged that on May 16, 2012, he reported to Thomas that Blackketter had knowingly lied to the City Council during an official meeting about the existence of "official City preventative maintenance records" that showed the City's Solid Waste Department had been adequately maintaining its garbage trucks. Jones alleged various violations of the Penal Code and stated that it is within the City's authority through the City's Police Department to investigate these violations. Jones did not allege that Thomas directly had the authority to regulate under, enforce, investigate, or prosecute a violation of the Penal Code. *See Needham*, 82 S.W.3d at 320. That the City has a division within it, the Police Department, charged with investigating and prosecuting crimes, does not transform the entire City as a governmental entity into an appropriate law-enforcement entity. *See*

21

*Weatherspoon*, 472 S.W.3d at 283. Rather, to satisfy the requirements of the Act, Jones had to show that he reported the alleged violation of law directly to the City's Police Department. *See Okoli*, 440 S.W.3d at 614. Here, there is no evidence in the record that Jones ever reported a violation of the Penal Code to the City's Police Department.

Even if a member of the City Council were considered an appropriate law-enforcement authority, Jones has failed to show that he, in good faith, reported a violation of the law. Jones alleged that his report to Thomas about Blackketter was essentially a report of a violation of law under sections 37.01(2), 37.02(a)(2), 37.09(a)–(d), and 37.10 of the Texas Penal Code. Section 37.02(a)(2) of the Texas Penal Code provides that a person commits the offense of perjury if, with intent to deceive and with knowledge of the statement's meaning, the person makes a false unsworn declaration under the Unsworn Declaration provision of the Texas Civil Practices and Remedies Code. Tex. Penal Code Ann. § 37.02(a)(2) (West 2011). The unsworn declaration covered in section 37.02 is statutorily defined as a written declaration that is subscribed by the person making the declaration as true under penalty of perjury. Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c) (West Supp. 2016). The conduct described in Jones's report to Thomas, as alleged in his pleading and reflected in the evidence, does not support a violation of section

22

37.02(a)(2). Furthermore, there are no pleadings or any evidence to support that Jones believed in good faith that he reported a violation of this law.

Section 37.09 of the Texas Penal Code describes the offense of "Tampering With or Fabricating Physical Evidence[.]" Tex. Penal Code Ann. § 37.09 (West Supp. 2016). It provides that a person commits an offense under this section if, knowing that an investigation or official proceeding is pending or in progress, the person "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding" or "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding." *Id.* § 37.09(a). Subsection (d) of section 37.09 provides that a person also commits an offense under this section if "knowing that an offense has been committed," he "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense[.]" *Id.* § 37.09(d)(1). Section 37.10 describes the offense of "Tampering With Governmental Record[.]" *Id.* § 37.10. It provides that a person commits an offense under this section if he:

(1) knowingly makes a false entry in, or false alteration of, a governmental record;

23

(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;

(3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;

(4) possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully;

(5) makes, presents, or uses a governmental record with knowledge of its falsity; or

(6) possesses, sells, or offers to sell a governmental record or a blank governmental record form with knowledge that it was obtained unlawfully.

*Id*. Section 37.01(2) defines "[g]overnmental record[,]" in relevant part, as including "anything belonging to, received by, or kept by government for information, including a court record[.]" *Id*. § 37.01(2)(A).

Jones does not allege any facts and there is no evidence in the record to show that at the time he spoke to Thomas, Jones, in good faith, believed that someone was currently, or had in the past, tampered with, altered, concealed, or otherwise fabricated evidence or government records. Jones appears to concede this point in his brief. Jones argues on appeal that "[t]he issue and concern for the City Mechanic and [Jones were] that maintenance records (which clearly qualify as 'government records' within the meaning of § 37.01(2)(A) of the Penal Code)

24

*might* be fabricated after the fact to support [Blackketter's] false statements." (emphasis added). Jones further argues that "if there was a concern that maintenance records *might* be fabricated, § 37.09(a)--(d) would apply." (emphasis added). He then argues that had Thomas directed the Police Department to investigate Jones's report, then "a *potential plan to fabricate* City documents" would have been discovered. (emphasis added). Even if Jones believed that Blackketter might violate laws in the future, belief in the possibility of a future violation is not evidence that he made a good-faith report of an existing or past violation of law. *See Gonzalez*, 325 S.W.3d at 627; *Lueck*, 290 S.W.3d at 885.

### 4.	Report to the Solid Waste Department's Superintendent-Anitra Smith

In his Third Amended Petition, Jones alleged that on May 23, 2012, he reported to the senior mechanic that Truck 1713, which was assigned to him, was "leaking potentially flammable hydraulic fluid used by the truck's hydraulic lift system." The senior mechanic informed Jones that the leak was small, and Jones's immediate supervisor ordered Jones to perform his garbage collection route using Truck 1713. When Jones refused to operate Truck 1713, he was instructed to report to Smith. Jones alleged he reported to Smith on May 23, 2012 and informed her that he did not want to operate Truck 1713 "because of the potential environmental and safety hazards that the hydraulic leak posed to the public and to the driver of

25

the truck." Jones alleged that he told Smith that he believed the operation of Truck 1713 "was illegal and that he could be cited by law enforcement for operating the truck." Jones alleged that Smith had the power and authority to prevent the operation of defective residential garbage trucks by the City's employees and was responsible for implementing the City's program of garbage collection with the use of properly maintained vehicles and equipment and properly trained staff.

On appeal, Jones contends that the primary violation of law that he reported was the operation of Truck 1713 on the public streets while in an unsafe condition in violation of section 547.004(a)(1) of the Texas Transportation Code. As noted above, section 547.004(a)(1) provides that "[a] person commits an offense that is a misdemeanor if the person operates or moves or, as an owner, knowingly permits another to operate or move, a vehicle that . . . is unsafe so as to endanger a person[.] Tex. Transp. Code Ann. § 547.004(a)(1). As with Jones's report to the City Manager, Jones's report to Smith did not include a report that an actual violation of the Transportation Code was occurring or had occurred in the past. Rather, he reported his concern that operating the truck on the road would be a violation of the law. Jones's concern regarding the potential of a future violation of law is not evidence that he made a good-faith report of an existing or past violation of law. *See Gonzalez*, 325 S.W.3d at 627; *Lueck*, 290 S.W.3d at 885.

26

Jones may have believed that his report to Smith concerned a violation of law; however, his belief had to have been reasonable based on his training and experience. *See Barth*, 403 S.W.3d at 856-57. Jones testified that he had never been stopped or cited for problems with the condition of the City's garbage trucks. He cites to no evidence of his past experiences that would support his subjective belief that he had reported a violation of law to Smith. In his deposition, Jones expressed concerns over things that could have happened *had* he taken the truck out that day. It is also undisputed that Jones's truck was inspected that day and determined to be safe to operate. We conclude that Jones has failed to present evidence that it was reasonable, in light of his training and experience and the circumstances presented, for him to believe that the conduct he reported to Smith was a violation of the law. At most, Jones reported his refusal to drive Truck 1713 for fear that he would violate an unspecified law.

Additionally, Jones has not shown that he in good faith believed Smith was an appropriate law-enforcement authority under the Act. On appeal, he claims that Smith was not just his "supervisor," but as a "department head" within the City, Smith was a City official and, as such, was an appropriate law-enforcement authority. He contends that a genuine issue of material fact exists as to whether it was reasonable for him to believe that Smith was an appropriate authority to

enforce "whether Port Arthur allowed the operation of residential garbage trucks with leaking hydraulic systems over the streets of Port Arthur[.]"

Even if we accept as true Jones's assertion that Smith had authority to enforce certain laws within her department, the type of internal authority to require or prohibit one's own employees from driving trucks in violation of a law is insufficient to make Smith an appropriate law-enforcement authority. *See Needham*, 82 S.W.3d. at 320, 321. The authority described by Jones is not the type of "outward-looking powers" the Act requires. *See McMillen v. Tex. Health & Human Servs. Comm'n*, 485 S.W.3d 427, 429 (Tex. 2016).

Moreover, Jones's testimony suggests that when he reported to Smith, it was not reasonable for him to believe that Smith was an appropriate law-enforcement authority to address the violation of law he contends he made. Jones testified that when employees reported problems with the trucks to Smith, she informed the employees that she could not do anything about it and directed them to speak to Blackketter. Jones has not alleged or presented any evidence to raise a fact issue as to whether Smith had the authority to enforce, investigate, or prosecute violations of the Texas Transportation Code against third parties outside the City's government structure. *See Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013).

28

Jones further argues that he reported unspecified "Water Code" violations and "Environmental Violations" to Smith. In his Third Amended Petition, Jones does not associate any specific Texas Water Code violation with his report to Smith, and he never alleges that Smith had the appropriate authority under the Act to address a violation of the Water Code. Jones alleges generally that sections 26.0136 and 26.121 of the Water Code give the City the authority to "manage and enforce the implementation of water quality management functions and the protection of its watershed against activities that may cause the discharge of pollutants into its water supply or its watershed."

Section 26.011 of the Water Code provides that unless specifically stated otherwise, the Texas Natural Resource Conservation Commission ("TNRCC") shall administer the provisions of chapter 26 and control the water quality of the State and establish the level of water quality to be maintained. Tex. Water Code Ann. § 26.011 (West 2008). While the Water Code defines "Commission" as the TNRCC, the TNRCC changed its name as part of the agency's 2001 sunset review to the TCEQ. *See* Tex. Water Code Ann. § 7.001(1); Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985; *see FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 351 S.W.3d 306, 308 n.2 (Tex. 2011). Section 26.0136(a) of the Code sets forth the enforcement authority for violations of

29

provisions within chapter 26 of the Code, which governs "Water Quality Control[.]" *See id*. §26.0136(a). It provides that the Commission is the State agency with primary responsibility for implementation of water quality management functions, including enforcement actions within the State. *Id*. §§ 26.001, 26.0136(a). Subpart (b) of this statute provides in relevant part that this section is not intended "to enlarge, diminish, or supersede the water quality powers, including enforcement authority, authorized by law for . . . local governments." *Id*. § 26.0136(b). Section 26.121 governs discharges of waste and pollutants into or adjacent to water in the State. *See generally id*. § 26.121. We note that sections 26.121 and 26.027 of the Code provide that there are circumstances in which the Commission may issue permits and amendments to permits for the discharge of waste or pollutants into or adjacent to water in the State. *Id*. §§ 26.027, 26.121.

Even if we were to assume that Jones reported a violation of the Texas Water Code when he made a report to Smith, Jones has failed to show that Smith was an appropriate law-enforcement authority under the Whistleblower Act. Section 26.0136(b) of the Texas Water Code does not give local governments the authority to enforce violations of chapter 26. *See id*. § 26.0136(b). Rather, it provides that the provisions of chapter 26 do not diminish authority that may be

30

granted to local authorities by other laws. *See id.* Jones has not alleged any provisions of the Texas Water Code expressly giving local governments the authority to enforce the provisions of chapter 26. We conclude that Jones has failed to show that Smith was an appropriate law-enforcement authority under the Act. *See Gentilello*, 398 S.W.3d at 687 ("A supervisor looking into and addressing possible noncompliance in-house bears little resemblance to a law-enforcement official formally investigating or prosecuting that noncompliance on behalf of the public, or a regulatory authority charged with promulgating or enforcing regulations applicable to third parties generally."). We further conclude that Jones has not presented any evidence that it was reasonable in light of his training and experience in the department to conclude that Smith had authority outside the department to enforce Water Code provisions generally. *See id.* at 689. For all of these reasons, Jones cannot rely upon his report to Smith to form the basis of his Whistleblower claim.

## 5.    Report to the City's Appeals Committee

In his Third Amended Petition, Jones alleges that under the City's grievance procedure, on June 28, 2012, he spoke at the appeal hearing of his termination. Jones alleges that during the hearing, he reported to the Appeals Committee "the dangers of leaking hydraulic fluid from its garbage trucks" and that he informed

31

the Appeals Committee that he had reported safety violations to OSHA. Jones informed the Appeals Committee that "he believed that he had been terminated in retaliation for his good-faith reports of multiple violations of law by the City pertaining to environmental compliance and safety and workplace safety." Jones alleges that the Appeals Committee retaliated against him for this report by recommending that Jones's termination be upheld. He further claims that the City Manager retaliated against him by accepting the Appeals Committee's recommendation.

To the extent that Jones is claiming on appeal to this Court that he made a qualifying Whistleblower report to the Appeals Committee, we conclude that Jones has failed to allege or otherwise show that the Appeals Committee was an appropriate law-enforcement authority to report any violations of the law regarding the garbage trucks. The very nature of the Appeals Committee suggests its authority is restricted solely to compliance-type issues within the City. Jones has presented no evidence to show that the Appeals Committee had any law-enforcement authority over anyone other than the City's own employees. Moreover, even had Jones presented evidence that he subjectively believed the Appeals Committee was an appropriate law-enforcement authority, we conclude

that he has failed to allege or present any evidence to show that this belief was objectively reasonable in light of his training and experience.

## 6.     Report to OSHA and the TCEQ

In his Third Amended Petition, Jones alleges that sometime before June 8, 2012, he reported the unsafe working conditions at the City's Solid Waste Department to OSHA. He also alleges that sometime before June 8, 2012, he filed a complaint with the TCEQ accusing the City of violating title 30, section 330.103(a) of the Texas Administrative Code by failing to collect municipal solid waste containing putrescibles at least once a week.[2] *See generally* 30 Tex. Admin. Code § 330.103(a) (Westlaw current through 41 Tex. Reg. No. 8226, dated Oct. 14, 2016) (Tex. Comm'n. Envtl. Quality) ("Municipal solid waste (MSW) containing putrescibles shall be collected a minimum of once weekly to prevent propagation and attraction of vectors and the creation of public health nuisances."). The complaints that Jones filed with OSHA or the TCEQ are not in the appellate record. However, in his sworn answers to interrogatories, Jones states that he filed his report to the TCEQ sometime between May 24, 2012, and June 8, 2012. In the same answers, he states that he made a report to OSHA on May 24, 2012.

---

[2] Jones alleged that he reported that the City violated "30 TAC §300.103(a) pertaining to [the City's] failure to collect municipal solid waste containing putrescibles, a minimum of once per week." Inasmuch as this is an apparent typographical error, we refer to the correct statutory provision herein.

Therefore, both reports were made after Smith decided to send Jones home indefinitely and initiate termination proceedings on May 23, 2012.

Even if Jones could show that either his report to OSHA or his report to the TCEQ was a good-faith report of a violation of law to an appropriate law-enforcement authority, Jones is still required to show that his making the report caused him to suffer retaliation. *See Zimlich*, 29 S.W.3d at 67. The City contends that Jones cannot show causation regarding his OSHA and TCEQ reports because the evidence shows that the relevant decision-makers had no knowledge of these reports prior to making their respective decisions to terminate Jones.

Jones argues that there is a genuine issue of material fact regarding the date he was terminated. He contends that the notice of termination from the City is inherently contradictory on this point because it was signed and approved on June 7, 2012, but the notice states that the termination is effective dating back to May 23, 2012. He argues that "[a]t best, the evidence shows that [Jones] was not terminated before June 8, 2012, when he was given [the notice]."

However, it is undisputed that the City made a decision to take adverse personnel action against Jones on May 23, 2012, when Smith sent Jones home indefinitely for his refusal to drive Truck 1713. In Jones's Third Amended Petition, he alleges that Smith "sent him home from work indefinitely, as an adverse and

34

disciplinary employment action." It is also undisputed that later the same day, Smith and Blackketter signed a notice of termination concerning Jones's employment with the City. By June 7, 2012, all of the required decision-makers had approved the decision to terminate Jones and had signed the notice of termination. The termination notice is signed by Smith, Blackketter, Comeaux, and Albert Thigpen, the Director of Personnel. Jones received his notice of termination on June 8, 2012.

Jones had the burden to present some evidence that at least one of these decision-makers knew about his reports to OSHA or the TCEQ when he or she took adverse personnel action against him. There is no evidence in the record to show affirmatively that any of the decision-makers were aware of these complaints before they made the decision to terminate Jones. In fact, the evidence in the record supports that the decision-makers were not aware of these complaints. Jones testified that he never informed Smith or Blackketter that he had filed complaints with TCEQ or OSHA. Jones testified that he did not send copies of his TCEQ complaint to the City and could not recall if he had sent the City a copy of his OSHA complaint. When asked whether he ever told anyone at the City that he was speaking to TCEQ, Jones responded, "I'm not sure." The only evidence of Jones informing anyone with the City that he had filed a complaint with either OSHA or

TCEQ comes from his argument before the Appeals Committee. While the full transcript of this hearing is not in the record, the parties both acknowledge that Jones informed the Committee that he had filed a report with OSHA.

In Smith's affidavit, she states that prior to making her decision to terminate Jones, she was not aware that Jones had made any report of a violation of law to either the TCEQ or to OSHA. In Blackketter's affidavit, he likewise states that he had no knowledge of Jones's complaints to the TCEQ or to OSHA prior to making his decision to support the termination of Jones. Comeaux, in his sworn affidavit, states that prior to his decision to approve the notice of termination, he had no knowledge of Jones's complaints to the TCEQ or to OSHA. He further states that he had no knowledge of these complaints prior to his decision to follow the recommendation of the Appeals Committee in upholding Jones's termination. The record does not contain an affidavit from Thigpen, but there is no evidence in the record that Thigpen was aware of Jones's complaints prior to his decision to approve the notice of termination. While there is evidence that Thigpen was the chairperson on the Appeals Committee, his position appeared to be that of a non-voting member. Jones received his notice of termination on June 8, 2012. As such, that Jones mentioned his OSHA complaint during his hearing before the Appeals

Committee is not informative of Thigpen's knowledge prior to making a decision related to Jones's termination.

In *Canutillo Independent School District v. Farran*, the employee of a school district reported violations of law regarding the use of government funds and waste disposal regulations to the school district's superintendent, assistant superintendent, internal auditor, and the school board. 409 S.W.3d at 654. In March 2009, after the employee had complained about the violations of the law, the employee was suspended for making threatening calls to a man whom he believed was having an inappropriate relationship with the employee's wife. *Id*. at 654-55. In May, the board voted to give the employee notice of termination. *Id*. at 655. In July, the employee contacted the FBI regarding the conduct he had previously complained about. *Id*. The school district became aware of the employee's report to the FBI. *Id*. In August, the board held a due process hearing on the employee's termination. *Id*. The hearing officer determined good cause existed for the employee's termination and recommended that the board's initial termination decision be sustained. *Id*. In September, the board accepted the hearing officer's recommendation, and the employee was terminated. *Id*.

In concluding that the employee failed to show causation under the Whistleblower Act, the Texas Supreme Court noted that the employee was

37

suspended and had been given notice of the board's intent to terminate him before the employee made the report to the FBI. *Id*. at 656. The Court explained that for the employee to prevail on a claim that the FBI report caused his termination, the employee would have to show that but for the report, the school district would have changed its mind and retained him. *Id*. The Court concluded that there was legally insufficient evidence from which a reasonable and fair-minded factfinder could make such a finding. *Id*. According to the Court, the employee's "evidence showed that from the initiation of [the] termination proceedings, prior to the FBI report, the District never wavered in its view that [the employee] should be terminated." *Id*. The Court found no evidence in the record that the school board would have been persuaded to change its mind but for the FBI report, that the FBI report had any influence on the hearing officer's recommendation that the initial termination decision be sustained, or that the report in any way played a role in the board's initial or final termination decision. *Id*. The Court affirmed the trial court's judgment granting the plea to the jurisdiction. *Id*. at 657.

Here, there is no evidence in the record that the City wavered in its view that Jones should be terminated. The evidence showed that prior to Jones's reports to OSHA and the TCEQ, Jones's supervisors had decided to terminate his employment with the City. There is no evidence that at any point in time relevant

38

to Jones's termination, any of the decision-makers learned or had knowledge of Jones's reports to the TCEQ or OSHA prior to making their decisions. In fact, the evidence in the record shows conclusively that the decision-makers had no prior knowledge of Jones's reports, so he could not have been terminated because of those reports. *See Vernagallo*, 181 S.W.3d at 25; *Kirkland*, 2012 WL 1149288, at *2. Moreover, there is no evidence that anyone, including the Appeals Committee, would have changed their decision but for the OSHA and TCEQ reports. We conclude that Jones has failed to establish that he suffered retaliation as a result of making a report to either OSHA or the TCEQ. *See Farran*, 409 S.W.3d at 656; *see also Barth*, 403 S.W.3d at 857 (concluding that a Whistleblower report to the university police was not a report to an appropriate law-enforcement authority when the employee did not make the report of the violation of the law until after the alleged retaliatory acts occurred); *Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 927 (Tex. App.—El Paso 2016, no pet.) (concluding that the trial court erred in refusing to dismiss retaliation claim under the Texas Commission on Human Rights Act when employee's protected activity could not have caused the adverse employment decision because employee did not engage in protected activity until after she received notice of her termination); *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 914 (Tex. App.—El Paso 2015, no pet.)

(holding that employer's alleged retaliatory acts that occurred before plaintiff filed EEOC charge could not have been caused by the EEOC filing).

## IV.    Conclusion

Jones failed to establish an objective, good-faith belief that he reported an alleged violation of the law to appropriate law-enforcement authorities that caused him to suffer an adverse personnel action under the Act.[3] Accordingly, we conclude that the trial court did not err in determining it lacked jurisdiction over Jones's Whistleblower action and in dismissing the cause. We overrule Jones's two issues and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 22, 2015
Opinion Delivered November 17, 2016

Before McKeithen, C.J., Kreger and Horton, JJ.

---

[3] Because our determination as to the trial court's ruling on the City's plea to the jurisdiction is dispositive, we need not address any issues concerning the trial court's ruling on the City's motion for summary judgment. *See* Tex. R. App. P. 47.1.